NORA FRIMANN, City Attorney (93249)
ARDELL JOHNSON, Assistant City Attorney (95340)
MAREN J. CLOUSE, Chief Deputy City Attorney (228726)
KENDRA E. MCGEE, Senior Deputy City Attorney (260459)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone Number: (408) 535-1900
Facsimile Number: (408) 998-3131
E-Mail Address:  cao.main@sanjoseca.gov

Attorneys for Defendants, CITY OF SAN JOSE, SAN
JOSE POLICE DEPARTMENT, EDGARDO GARCIA,
and ERIC MOSUNIC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YURIDIA OCHOA,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, EDGARDO GARCIA, ERIC MOSUNIC, and DOES 1 through 10,<br><br>        Defendants. | Case Number:  5:21-cv-02456-BLF<br><br>**DEFENDANTS' MOTION TO DISMISS CERTAIN OF PLAINTIFF'S CLAIMS; NOTICE, MOTION, AND MEMORANDUM IN SUPPORT**<br><br>JURY TRIAL DEMANDED<br><br>Date:  September 30, 2021<br>Time:  9:00 a.m.<br>Courtroom:<br>Judge:  Hon. Beth Freeman |

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

Please take notice that on or before September 30, 2021 at 9:00 a.m., or as soon thereafter as the case may be heard in the above-entitled Court, located at 280 South First Street, San Jose, California,, Defendants City of San Jose ("City"), San Jose Police Department, Edgardo Garcia, and Eric Mosunic (collectively, "Defendants") will and hereby do move the Court, pursuant to Rule of

1

DEFENDANTS' MOTION TO DISMISS CERTAIN OF PLAINTIFF'S CLAIMS;          5:21-cv-02456-BLF
NOTICE, MOTION, AND MEMORANDUM IN SUPPORT                                              1840198

Civil Procedure 12(b)(6), for an order dismissing all counts against former Chief Garcia; the Second Count, brought against Doe Defendants; the Seventh and Ninth Counts against Officer Eric Mosunic; and the First, Third, Fourth, Sixth, Seventh, and Ninth Counts against the City.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Complaint fails to state a claim against former Chief of Police Edgardo Garcia on the theory of supervisor liability under 42 U.S.C. § 1983 and state law.

2.      Whether the Complaint fails to state a *Monell* claim against the City of San Jose.

3.      Whether the Complaint fails to state a claim for failure to render post-arrest medical care under 42 U.S.C. § 1983.

4.      Whether the Complaint fails to state a claim under the Rehabilitation Act.

5.      Whether the Complaint fails to state a claim under the Americans with Disabilities Act.

6.      Whether the Complaint fails to state a claim under the Bane Act.

7.      Whether the Complaint fails to state a claim for intentional infliction of emotional distress.

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      INTRODUCTION ...............................................................................................1

II.     PLAINTIFF'S ALLEGATIONS ...........................................................................3

III.    LEGAL STANDARD ..........................................................................................4

IV.     LEGAL ARGUMENT .........................................................................................5

    1.    Police Chief Garcia Is Not Liable Under 42 U.S.C. Section 1983 ...........................5

    2.    Plaintiff's State Law Claims Against Chief Garcia Should Also Be Dismissed ......6

    3.    The Complaint Does Not Adequately Allege a *Monell* Claim Against the City ......7

        a.   Alleged Policy.................................................................................8

        b.   Custom or Practice ........................................................................10

        c.   Failure to Train.............................................................................11

    4.    The Complaint Fails to State a Claim for Failure to Render Medical Aid .............13

    5.    Plaintiff Fails To State A Claim Under the Rehabilitation Act or ADA ...............13

        a.   Plaintiff's ADA Claim Fails ........................................................14

        b.   Plaintiff's Rehabilitation Act Claim Fails....................................19

    6.    The Complaint Fails to State a Claim Under the Bane Act ..................................20

    7.    Plaintiff fails to state an IIED claim against Defendants .......................................21

V.      CONCLUSION.................................................................................................22

i

DEFENDANTS' MOTION TO DISMISS CERTAIN OF PLAINTIFF'S CLAIMS;                    5:21-cv-02456-BLF
NOTICE, MOTION, AND MEMORANDUM IN SUPPORT                                        1840198

1

## TABLE OF AUTHORITIES

2

CASES

3

*AE v. Cty. of Tulare*,
4
 666 F.3d 631 (9th Cir. 2012)....................................................................................9

*Arteaga v. City of Oakley*,
5
 2020 WL 511876 (N.D. Cal. Jan. 31, 2020) ................................................8, 10, 12

6
*Ashcroft v. Iqbal*,
7
 556 U.S. 662 (2009)....................................................................................................4

8
*Bailey v. County of San Joaquin*,
 671 F.Supp.2d 1167 (E.D. Cal. 2009)........................................................................7

9
*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*,
10
 520 U.S. 397 (1997)..................................................................................................12

11
*Bordegaray v. Cty. of Santa Barbara*,
 2016 WL 7223254 (C.D. Cal. Dec. 12, 2016) .........................................................13

12
*Borges v. City of Eureka*,
13
 2017 WL 363212 (N.D. Cal. Jan. 25, 2017) ...........................................................13

14
*City of Revere v. Mass. Gen. Hosp.*,
 463 U.S. 239 (1983)..................................................................................................13

15
*City of St. Louis v. Praprotnik*,
16
 485 U.S. 112 (1988)....................................................................................................8

17
*Connick v. Thompson*,
 563 U.S. 51 (2011)....................................................................................................12

18
*Conservation Force v. Salazar*,
19
 646 F.3d 1240 (9th Cir. 2011).............................................................................4, 10

20
*Cornell v. City & Cty. of San Francisco*,
 17 Cal.App.5th 766 (Cal. App. 2017) ......................................................................20

21
*Davidson v. City of Westminster*,
22
 32 Cal.3d 197 (Cal. 1982)........................................................................................21

23
*Davis v. Clearlake Police Dep't*,
 2008 WL 4104344 (N.D. Cal. Sept. 3, 2008) ...........................................................9

24

*Dougherty v. City of Covina*,
    654 F.3d 892 (9th Cir. 2011) .......................................................................... 8

*Dudgeon v. Cty. of Sonoma*,
    2020 WL 663477 (N.D. Cal. Feb. 11, 2020) .................................................. 11

*Duvall v. Cty. of Kitsap*,
    260 F.3d 1124 (9th Cir. 2001) ...................................................................... 17

*Estate of Adomako v. City of Fremont*,
    2018 WL 587146 (N.D. Cal. Jan. 29, 2018) .................................................. 13

*Estate of Pimentel v. City of Ceres*,
    2019 WL 2598697 (E.D. Cal. June 25, 2019) ................................................. 6

*Flores v. Cty. of Los Angeles*,
    758 F.3d 1154 (9th Cir. 2014) ...................................................................... 12

*Gillette v. Denmore*,
    979 F.2d. 1342 (9th Cir. 1992) ..................................................................... 10

*Hall v. City of Walnut Creek*,
    2020 WL 408989 (N.D. Cal. Jan. 24, 2020) ................................... 17, 18, 19

*Hansen v. Black*,
    885 F.2d 642 (9th Cir. 1989) .......................................................................... 5

*Harper v. Cty of Merced*,
    2020 WL 243118 (E.D. Cal. Jan. 16, 2020) ................................................. 17

*Hocking v. City of Roseville*,
    2008 WL 1808250 (E.D. Cal. 2008) ........................................................ 9, 10

*Hui Jie Jin v. Alameda Cty.*,
    2019 WL 7831143 (N.D. Cal. Feb. 4, 2019) ................................... 16, 17, 18

*Hunter v. Cty. of Sacramento*,
    652 F.3d 1225 (9th Cir. 2011) ...................................................................... 11

*Jaime-Gonzalez v. Cty. of Los Angeles*,
    2018 WL 8058840 (C.D. Cal. Dec. 26, 2018) ......................................... 20, 21

*Juricich v. Cty. of San Mateo*,
    2020 WL 619840 (N.D. Cal. Feb. 10, 2020) ................................................. 17

DEFENDANTS' MOTION TO DISMISS CERTAIN OF PLAINTIFF'S CLAIMS;          5:21-cv-02456-BLF
NOTICE, MOTION, AND MEMORANDUM IN SUPPORT                                           1840198

*Lacey v. Maricopa Cty.*,
  693 F.3d 896 (9th Cir. 2012) ................................................................. 6

*Leer v. Murphy*,
  844 F.2d 628 (9th Cir. 1988) ................................................................. 6

*Lightbourn v. Cty. of El Paso*,
  118 F.3d 421 (5th Cir. 1997) ........................................................... 14, 20

*Lozano v. Cty. of Santa Clara*,
  2019 WL 6841215 (N.D. Cal. Dec. 16, 2019) ...................................... 8, 9

*Monell v. Dept. of Soc. Serv's*,
  436 U.S. 658 (1978) ........................................................................... 1, 8

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ............................................................... 18

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) .......................................................................... 5, 8

*Razavi v. Martins*,
  2018 WL 1933482 (N.D. Cal. Apr. 24, 2018) ...................................... 18

*Redmond v. San Jose Police Dep't*,
  2017 WL 5495977 (N.D. Cal. Nov. 16, 2017) ........................................ 7

*Reese v. Cty. of Sacramento*,
  888 F.3d 1030 (9th Cir. 2018) ............................................................. 20

*San Diego Branch of Nat'l Ass'n for Advancement of Colored People v. Cty. of San Diego*,
  2018 WL 1382807 (S.D. Cal. Mar. 19, 2018) ........................................ 7

*Sanchez v. City of Fresno*,
  914 F.Supp.2d 1079 (E.D. Cal. 2012) ................................................... 7

*Sanders v. Arneson Prods., Inc.*,
  91 F.3d 1351 (9th Cir. 1996) ............................................................... 15

*Sandoval v. Cty. of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) ............................................................... 20

*Severi v. Cty. of Kern*,
  2017 WL 6513264 (E.D. Cal. 2017) ....................................................... 9

iv

*Sharer v. Oregon,*
    581 F.3d 1176 (9th Cir. 2009)..................................................................14, 19, 20

*Sheehan v. City & Cty. of San Francisco,*
    743 F.3d 1211 (9th Cir. 2014)..........................................................................15, 16

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001)..................................................................................4

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011)................................................................................5

*Strauss v. City of Chicago,*
    760 F.2d 765 (7th Cir. 1985)............................................................................9, 10

*Strong v. State,*
    201 Cal.App.4th 1439 (Cal. Ct. App. 2011) ..........................................................7

*Sweiha v. Cty. of Alameda,*
    2019 WL 4848227 (N.D. Cal. Oct. 1, 2019)..........................................16, 17, 19

*Tatum v. City & Cty. of San Francisco,*
    441 F.3d 1090 (9th Cir. 2006)..............................................................................13

*Tekle v. United States,*
    511 F.3d 839 (9th Cir. 2007)............................................................................7, 21

*Walker v. Doe,*
    2019 WL 6790765 (E.D. Cal. Dec. 12, 2019)......................................................11

*Weinreich v. Los Angeles Cty. Metro. Transp. Auth.,*
    114 F.3d 976 (9th Cir. 1997)................................................................................14

*Weitzel v. Cty. of Los Angeles,*
    2016 WL 11517049 (C.D. Cal. Apr. 26, 2016) .....................................................7

*Zukle v. Regents of Univ. of California,*
    166 F.3d 1041 (9th Cir. 1999)..............................................................................14

DEFENDANTS' MOTION TO DISMISS CERTAIN OF PLAINTIFF'S CLAIMS;
NOTICE, MOTION, AND MEMORANDUM IN SUPPORT

5:21-cv-02456-BLF
1840198

STATUTES

29 U.S.C. 794 ...................................................................................................... 14

42 U.S.C. § 1983 ............................................................................................. passim

42 U.S.C. § 12132 (1990) ................................................................................... 14

42 U.S.C § 12102(1) ............................................................................................ 15

Cal. Civ. Code § 52.1 ......................................................................................... 20

California Welfare & Institutions Code section 5150 ......................................... 15

RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 4

OTHER AUTHORITIES

Restatement (Second) of Torts § 46. (1965) ...................................................... 21

Restatement (Second) of Torts § 47 (1965) ....................................................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Complaint asserts that Officer Mosunic, former Chief Garcia, and the City of San Jose[1] are liable for injuries Plaintiff Yuridia Ochoa suffered after he was shot by Officer Mosunic following a car chase through the City that resulted in Plaintiff striking a pedestrian (and a San Jose police officer) with his vehicle. After Plaintiff repeatedly failed to obey police orders, sought to evade police, and reversed into Officer Mosunic multiple times, Officer Mosunic shot him. Plaintiff's Complaint alleges that this encounter with the San Jose Police Department ("SJPD") gave rise to the following claims: excessive force in violation of the Fourth Amendment, the California Constitution, and the California Bane Act; municipal liability under *Monell*;[2] failure to render post-arrest medical care under Section 1983 and the California Constitution; violation of the Rehabilitation Act; violation of the Americans with Disabilities Act ("ADA"); battery; and intentional infliction of emotional distress. However, the bulk of allegations in the Complaint invoke the legal standards of the claims Plaintiff makes, unsupported by sufficient factual allegations. Plaintiff cannot state claims on the basis of legal conclusions.

Plaintiff has failed to plead sufficient facts to support the following claims, and Defendants request the Court dismiss them for the reasons set forth below.

1)     Police Chief Garcia cannot be held liable for Section 1983 violations or state law claims on a theory of supervisory liability or *respondeat superior*.

2)     To the extent Plaintiff attempts to allege a *Monell* claim for an unconstitutional custom or policy, this attempt fails because he has not alleged a pervasive pattern (or even a past single

---

[1] The Complaint also names the San Jose Police Department as a Defendant, but the Police Department is not a separate legal entity from the City of San Jose and is improperly named as a separate Defendant.

[2] *Monell v. Dept. of Soc. Serv's*, 436 U.S. 658 (1978).

1

instance) of similar excessive force violations within SJPD, nor has he identified any specific policy within the department of such a pattern or practice. Plaintiff's exclusive reliance on other lawsuits and news media reports including ones involving unsustained excessive force complaints—without any indication that such complaints involved officers actually violating a person's rights in the way Plaintiff alleges or doing so without consequence—does not suggest such a pattern and is categorically insufficient to state

a *Monell* claim.

3)   Similarly, any *Monell* claims based on asserted failure to train also fails because the Complaint's recitation of the legal standard is insufficient and unsupported by any actual facts to support such a claim.

4)   Plaintiff's claim for failure to render post-arrest medical care fails because Plaintiff's complaint concedes that medical care was provided as soon Plaintiff was safely taken into custody, which is all that is required under the law.

5)   Plaintiff's Bane Act claims fails because he has not done anything more than recite the legal standard for such a claim, unsupported by any facts.

6)   Finally, Plaintiff has not stated an IIED claim because he has not alleged facts plausibly suggesting that police officers acted with the particular purpose of causing him emotional disturbance. On the contrary, the only facts Plaintiff alleges show that the officers used force to complete an arrest, not specifically to inflict emotional harm on Plaintiff.[3]

The Complaint is inadequate to meet Plaintiff's burden to plead sufficient factual allegations that, if true, would entitle him to relief on these asserted claims. Defendants therefore requests that

---

[3]  Defendants do not challenge in this Motion whether the Complaint adequately pleads claims for battery and negligence against Officer Mosunic and the City, and excessive force claims against Officer Mosunic (as opposed to the City).

the Court confine this case what has been properly pled by dismissing: all claims against former

Chief Garcia; the claims against the City for excessive force; and the unreasonable medical care,

Bane Act, intentional infliction of emotional distress, ADA, and Rehabilitation Act claims in their

entirety.

## II.    PLAINTIFF'S ALLEGATIONS

The following are the material factual allegations from Plaintiff's Complaint. Defendants

assume the truth of the allegations for purposes of this motion and recite them in a light most

favorable to Plaintiff.

On June 20, 2020 at approximately 9:00 p.m., San Jose police officers responded to an illegal

"sideshow" in downtown San Jose where Plaintiff was doing "donuts" with his vehicle in the middle

of an intersection in front of City Hall. (Compl. ¶¶12-13.) Officers attempted to conduct a traffic

stop of Plaintiff, but Plaintiff fled the scene in his vehicle. (Compl. ¶¶14-15.) Sergeant Connolly and

Officer Mosunic pursued Plaintiff on their police motorcycles. (Compl. ¶16.) While evading the

officers, Plaintiff hit a woman on a scooter in an intersection but continued to flee in his vehicle.

(Compl. ¶¶17-19.)

Plaintiff pulled into a gated parking garage followed by Officer Mosunic, who positioned his

motorcycle near the rear driver's side of Plaintiff's vehicle. (Compl. ¶¶24-29, 32.) Officer Mosunic

approached the driver's side window on foot with his weapon drawn and ordered Plaintiff to put his

hands up. (Compl. ¶¶34-35.) Plaintiff did not respond to the officer's commands. Officer Mosunic

then ordered Plaintiff to turn off the vehicle and backed away toward his motorcycle to take cover.

(Compl. ¶37-39.) Plaintiff did not obey the officer's commands and instead began to move his

vehicle in reverse toward the officer. (Compl. ¶42.) Officer Mosunic fired at the vehicle six times.

(Compl. ¶44.) Officer Mosunic continued to yell commands to Plaintiff who remained in the vehicle:

"Don't move! Don't move!" (Compl. ¶47.) Plaintiff again ignored those commands and instead

reversed toward Officer Mosunic. (Compl. ¶48.) Officer Mosunic fired six more shots at Plaintiff's

vehicle. (Compl. ¶49.) Officer Mosunic then continued to yell to Plaintiff to stop moving, but

Plaintiff yet again reversed in Officer Mosunic's direction, forcing Officer Mosunic to fire his

weapon three more times. (Compl. ¶¶52-54.) Plaintiff was struck by six of the rounds that Officer

Mosunic fired. (Compl. ¶58.)

At some point, Plaintiff's vehicle finally came to a stop. (Compl. ¶56.) He then opened the

door to exit the vehicle, at which point officers deployed a Noise Flash Device. (Compl. ¶68-69.)

Prior to conducting a weapons search, Plaintiff was ordered to get down on the ground on his hands

and knees, and to crawl toward the officers. (Compl. ¶¶74-75.) He was then taken into custody and

transported to a medical facility, where he was treated for his injuries. (Compl. ¶78.)

### III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint

must plead "sufficient facts 'to state a facially plausible claim to relief.'" *Conservation Force v.*

*Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court treats

factual allegations as true unless they "contradict matters properly subject to judicial notice or by

exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court disregards

"labels and conclusions" that are not supported by separately alleged facts. *See Iqbal*, 556 U.S. at

678; *Sprewell*, 266 F.3d at 988 (the Court does not "accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences"). Once the Court has

removed the unsupported "naked assertions" from a complaint, see *Iqbal*, 556 U.S. at 678, dismissal

under Rule 12(b)(6) "is proper if there is a lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory." *Conservation Force*, 646 F.3d at 1242

4

(internal quotations omitted).

## IV.     LEGAL ARGUMENT

**1.  Police Chief Garcia Is Not Liable Under 42 U.S.C. Section 1983**

Although Plaintiff asserts a cause of action against Chief Garcia for excessive force, it is unclear from the Complaint what the theory of liability is against the former chief. The only allegations in the Complaint related to Chief Garcia are that he was the Chief of Police and that he "was the final policy-making authority under state law . . . at all relevant times." (Compl. ¶89.) To the extent this is Plaintiff's attempt to assert liability against Chief Garcia under the theory of supervisory liability under Section 1983, the allegations in the Complaint fall far short of pleading such a claim. The Complaint does not identify any wrongful conduct that Chief Garcia engaged in. Rather, it alleges that the Officer Mosunic and other unnamed officers used excessive force and failed to render post-arrest medical care in violation of Section 1983. The Complaint then summarily concludes that Chief Garcia "knowingly participated in, acquiesced to, and/or [was] deliberately indifferent to the creation and maintenance of a culture permitting or encouraging personnel's use of unreasonable and excessive force." (Compl. ¶¶91.) These allegations are mere recitations of legal standards and are inadequate to state a Section 1983 claim against the Chief of Police.

Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability. *Hansen v. Black,* 885 F.2d 642, 645-46 (9th Cir. 1989) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)). "A defendant may be held liable as supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation omitted). A supervisor "causes" a constitutional deprivation when he "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to

do that causes the deprivation"; or "set[s] in motion a series of acts by others which [he] knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quotation omitted). Allegations of causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

The Complaint does not meet those standards. It alleges no facts as to what Chief Garcia did, saw, or knew. A district court faced with similarly unsupported allegations that a supervising officer "knew or should have known that law enforcement officers under his command ... were inadequately trained, supervised, or disciplined" dismissed putative supervisory claims. *Estate of Pimentel v. City of Ceres*, 2019 WL 2598697, at *4 (E.D. Cal. June 25, 2019). That court noted that it "can find no factual allegations in the operative complaint that, if true, would demonstrate that [the defendant] took any action with respect to plaintiffs. The allegations of the complaint do not involve any of [the defendant]'s conduct, but are instead premised solely on his role as a supervisor. … Left unsaid is what defendant [] did or failed to do." *Id.* The Complaint in this case has the same problem. It is not enough to allege that Chief Garcia was merely a supervisor or had policy-making authority. Plaintiff has to allege specifically what action Chief Garcia took or failed to take that led to Plaintiff's injuries. Because the Complaint fails to do that, the Section 1983 claims against Chief Garcia should be dismissed.

**2. Plaintiff's State Law Claims Against Chief Garcia Should Also Be Dismissed**

For the same reasons identified above, the state law claims for battery, intentional infliction of emotional distress ("IIED"), and negligence against Chief Garcia are inadequate and should also be dismissed. The claims for battery and IIED require allegations about a putative defendant's actions and/or intent that are not found in the Complaint. Under California law, battery requires the

*intent to harm* or offend plaintiff through physical contact. *Bailey v. County of San Joaquin,* 671 F.Supp.2d 1167, 1174 (E.D. Cal. 2009) (internal citations omitted). Similarly, intentional infliction of emotional distress requires a showing of extreme and outrageous conduct by the defendant with the *intention of causing*, or reckless disregard of the probability of causing, emotional distress. *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). Plaintiff alleges no facts related to former Chief Garcia's actions or intent in the Complaint that would satisfy either burden.

Plaintiff's negligence claim also fails. "In order to establish negligence, a plaintiff must demonstrate a duty on the part of defendant, breach of that duty, causation and damages." *Strong v. State*, 201 Cal.App.4th 1439, 1449 (Cal. Ct. App. 2011). Plaintiffs' Complaint merely recites the legal standard but fails to identify what duty Chief Garcia owed to him or how that duty was breached. (Compl. ¶157.) These cursory allegations do not raise a negligence claim against Chief Garcia.

In addition, Plaintiff cannot support a Bane Act claim against the Chief of Police based on the allegations that he failed to properly train or supervise other officers. Several district courts to consider the issue have declined to apply supervisor liability under the Bane Act. *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079, 1119 n.19 (E.D. Cal. 2012) ("no case has actually applied supervisor liability to a Bane Act claim and this federal Court is loathe to expand the reach of Bane Act liability"). *See also San Diego Branch of Nat'l Ass'n for Advancement of Colored People v. Cty. of San Diego*, 2018 WL 1382807, at *7 (S.D. Cal. Mar. 19, 2018); *Redmond v. San Jose Police Dep't*, 2017 WL 5495977, at *30 (N.D. Cal. Nov. 16, 2017); *Weitzel v. Cty. of Los Angeles*, 2016 WL 11517049, at *9 (C.D. Cal. Apr. 26, 2016). Accordingly, the state law claims against Chief Garcia should also be dismissed.

### 3. The Complaint Does Not Adequately Allege a *Monell* Claim Against the City

Plaintiff's Complaint attempts to allege a *Monell* claim against the City, but it falls short of

7

1  the standard required to plead such a claim. To establish that the City is liable for a constitutional

2  violation, Plaintiff must show that a policy, custom, or practice of the City was the "moving force"

3  behind the violation. *Monell*, 436 U.S. at 694; accord *Dougherty v. City of Covina*, 654 F.3d 892,

4  900 (9th Cir. 2011). The Complaint invokes that legal standard but fails to allege any facts to support

5  its claim that the City should be liable for its alleged policies, customs and practices, or failure to

6  train its officers.

7       ### a.   *Alleged Policy*

8       A municipal entity is not subject to suit under § 1983 unless an "official municipal policy of

9  some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436

10  U.S. 658, 691 (1978). This means that "a municipality cannot be made liable by application of the

11  doctrine of respondeat superior" for the acts or omissions of its employees. *Pembaur v. City of*

12  *Cincinnati*, 475 U.S. 469, 478 (1986). Rather, a plaintiff must show that the particular official who

13  violated his constitutional rights acted under a policy set by the municipality's "properly constituted

14  legislative body" or by "officials whose acts or edicts may fairly be said to represent official policy."

15  *See id.* at 480 (internal quotations omitted). "A 'policy' consists of a policy statement, ordinance,

16  regulation, or decision officially adopted and promulgated by [the City's] officers." *Lozano v. Cty. of*

17  *Santa Clara*, 2019 WL 6841215, at *17 (N.D. Cal. Dec. 16, 2019) (internal markings omitted). "If

18  there is no [such formal] unconstitutional policy, a municipality can only be liable if there is a

19  widespread practice [of unconstitutional conduct] so permanent and well settled as to constitute a

20  custom or usage." *Id.* (derivatively citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)).

21       "In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must

22  consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or

23  habits.'" *Arteaga v. City of Oakley*, 2020 WL 511876, at *6 (N.D. Cal. Jan. 31, 2020). The plaintiff

24  must "plead sufficient facts" regarding a "specific" policy "to allow the defendant to effectively

8

defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief." *Lozano*, 2019 WL 6841215 at *17 (citing *AE v. Cty. of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012)).

Plaintiff does not point to a specific City policy as the cause for the alleged use of excessive force.[4] Instead, Plaintiff summarily concludes that the City has a policy of "action or inaction whereby Defendants . . . knowingly participated in, acquiesced to, and/or were deliberately indifferent to the creation and maintenance of a culture permitted or encouraging the use of unreasonable and excessive force." (Compl. ¶91.) This is insufficient to plead a *Monell* claim.

Although his Complaint makes a general claim that the City has unconstitutional policies, the only facts Plaintiff alleges are twelve prior reported lawsuits involving SJPD and reported incidents from the news that involve accusations of excessive force. (Compl. ¶¶94(a)-(m).) But "[s]tatistics of unsustained complaints of excessive force . . . without any evidence that those complaints had merit, does not suffice to establish municipal liability under § 1983." *Hocking v. City of Roseville*, 2008 WL 1808250, at *5 (E.D. Cal. 2008); *see also Davis v. Clearlake Police Dep't*, 2008 WL 4104344, at *8 (N.D. Cal. Sept. 3, 2008) (plaintiff's *Monell* claim failed where plaintiff pointed to five previous lawsuits against the city and "complaints made against some of the officers at issue," which show "at most, that the City has a policy of investigating citizen complaints.")

As the Seventh Circuit noted in affirming the 12(b)(6) dismissal of a *Monell* claim similar to Plaintiff's here, "the number of complaints" filed against a police department "indicates nothing. People may file a complaint for many reasons, or no reason at all. That they file complaints does not indicate that the policies [the plaintiff] alleges exist do in fact exist and did contribute to his injury." *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985); *see also Severi v. Cty. of Kern*, 2017 WL 6513264, at *4 (E.D. Cal. 2017) ("[C]ourts have long recognized that statistical

---

[4]  Plaintiff alleges that Officer Mosunic violated several SJPD policies (Compl. ¶93b), contradicting his allegations that the policies themselves—as opposed to their alleged violation — are responsible for his harm.

1   information that is unsupported by any evidence that the [police action complained about was]

2   unlawful has very little, if any at all, relevance.")

3       Plaintiff does not allege as fact that any Complaint against a San Jose police officer was

4   sustained or warranted, aside from one jury verdict involving substantially different facts (*i.e.* a

5   woman shot in her home while holding a knife). Plaintiff does not allege that any of the referenced

6   complaints involved circumstances similar to what he claims happened in his Complaint. *See*

7   *Strauss*, 760 F.2d at 769 ("At the very least [plaintiff] would need to identify" what made prior

8   alleged arrests "illegal," and "to show that a similar illegality was involved in his case") (internal

9   quotations omitted). Plaintiff does not allege that the City received more complaints than any other

10  city of comparable size, or that the complaints against SJPD officers were more often legitimate.

11  *Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992). He simply presents the facts of other cases

12  involving SJPD officers and allegations of excessive force and leaves it at that. *Cf. Hocking*, 2008

13  WL 1808250 at *5.

14      That is not enough to state a plausible *Monell* claim. Because Plaintiff has alleged no other

15  facts to establish a long-standing, "permanent," and "widespread" policy or practice in San Jose of

16  encouraging or allowing police officers to use excessive force under similar circumstances, his claim

17  that the City has a settled policy to that effect fails at the pleading stage. *See Arteaga*, *supra,* WL

18  511876 at *6 (dismissing *Monell* claim for failure sufficiently to plead an "unconstitutional custom

19  or practice"); *Conservation Force*, 646 F.3d at 1242 (dismissal of complaint required where plaintiff

20  does not allege facts plausibly establishing violation under a cognizable legal theory).

21      **b.  *Custom or Practice***

22      Plaintiff's conclusory allegations as to an unconstitutional custom or practice are similarly

23  inadequate. The Complaint relies on the same vague, conclusory allegation that the City has a

24  custom of "action or inaction whereby Defendants . . . knowingly participated in, acquiesced to,

10

and/or were deliberately indifferent to the creation and maintenance of a culture permitted or encouraging the use of unreasonable and excessive force." (Compl. ¶91.) The Complaint alleges nothing more about the subject.

Far more is required to assert a claim that a municipality is liable for an alleged constitutional violation based on its customs or practices.  "'[L]iability for improper custom may not be predicated on isolated or sporadic incidents and … the custom must be so persistent and widespread that it constitutes a permanent and well settled city policy." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quotation omitted).  *See also Dudgeon v. Cty. of Sonoma*, 2020 WL 663477, at *3 (N.D. Cal. Feb. 11, 2020) (dismissing *Monell* claim where "there are no supporting facts alleging any particular instances of notice or a pattern of conduct").

Plaintiff's allegations are an effort to allege a legal standard, but they are not factual. They are therefore not considered in assessing whether the Complaint's allegations state a claim. Courts dismiss *Monell* claims based on such allegations as insufficient under *Twombly* and *Iqbal*. For instance, a district court rejected efforts to base a *Monell* claim on an allegation that the municipality had "customs, practices, and policies of 'allowing police officers to cover up excessive use of force' and 'allowing an ongoing pattern of deliberate indifference' to the rights to be free from excessive force and unreasonable seizures"; the court explained that "[a] conclusory allegation regarding the existence of a policy or custom unsupported by factual allegations is insufficient to state a *Monell* claim." *Walker v. Doe*, 2019 WL 6790765, at *10 (E.D. Cal. Dec. 12, 2019) (collecting cases). The Complaint's *Monell* allegations are almost indistinguishable from those the *Walker* court dismissed. Plaintiff has not stated a *Monell* claim against the City based on his cursory allegations of improper custom or practice.

### c. *Failure to Train*

Plaintiff also claims that the City's "insufficient training, supervision, or control of their

11

personnel . . . was the moving force behind and contributed to the unreasonable and excessive force against Yuridia Ochoa." (Compl. ¶92.) This attempt to plead a "failure to train" theory of *Monell* liability also fails. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). *Monell* liability under the theory is appropriate only in the "limited circumstance" when a "municipality's failure to train its employees" amounts to "deliberate indifference to [constitutional] rights." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal markings omitted). To establish fault under this "stringent standard," a plaintiff must generally allege a "pattern of similar constitutional violations by untrained employees" sufficient to place city policymakers on notice that "training is deficient in a particular respect." *Id.*; *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997) (failure to train theory of *Monell* liability requires showing that municipality has faced "recurring situations presenting an obvious potential" for similar constitutional violations).

Again, Plaintiff's allegations fall far short of this "high threshold" showing. *See Arteaga*, 2020 WL 511876 at *7. Plaintiff has alleged *no* prior instance of police excessive force under circumstances similar to those he alleges, let alone "a pattern of similar constitutional violations by untrained" police officers. *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (affirming dismissal of *Monell* claim against county based on a failure to train theory). Plaintiff's allegations of past excessive-force complaints—only one of which was sustained by a jury and involved a shooting that bears no similarity to this case—show neither that San Jose police officers have used excessive force in the past, nor that they have done so under circumstances similar enough to Plaintiff's that policymakers would be on notice of the "obvious" need for additional training on the subject. *See Brown*, 520 U.S. at 409. Plaintiff's failure-to-train claim thus "fails because it is not

12

1  plausible on its face." *See Flores*, 758 F.3d at 1160.

2  **4.   The Complaint Fails to State a Claim for Failure to Render Medical Aid**

3         Plaintiff asserts a claim for failure to render reasonable medical care after he was arrested,

4  but the complaint is devoid of any facts to support this claim. "[T]he Due Process Clause requires

5  the provision of medical care to 'persons ... who have been injured while being apprehended by the

6  police.'" *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (quoting *City

7  of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983)). In the Ninth Circuit, claims of denial of

8  medical care related to an arrest are governed by the Fourth Amendment's "objective

9  reasonableness" standard. *Borges v. City of Eureka*, 2017 WL 363212, at *6 (N.D. Cal. Jan. 25,

10  2017). Officers are required only to "promptly request[] medical assistance." *Tatum*, 441 F.3d at

11  1100. Beyond that, "the Ninth Circuit has not prescribed the contours of what constitutes objectively

12  reasonable post-arrest care to a suspect." *Estate of Adomako v. City of Fremont*, 2018 WL 587146, at

13  *5 (N.D. Cal. Jan. 29, 2018). Accordingly, "[a]n officer fulfills [his] obligation by promptly

14  summoning the necessary medical help or taking the injured detainee to a hospital." *Bordegaray v.

15  Cty. of Santa Barbara*, 2016 WL 7223254, at *8 (C.D. Cal. Dec. 12, 2016) (citing *Tatum*, 441 F.3d

16  at 1099).

17         Here, the Complaint merely states the legal standard for a failure to render aid claim, but

18  there are no facts alleging that the unnamed officers withheld prompt care from Plaintiff or failed to

19  call for medical assistant, which is all that is required under Ninth Circuit law. To the contrary, the

20  Complaint acknowledges that once Plaintiff was taken into custody, he was transported to the

21  hospital to receive medical care. (Compl. ¶78.) At a minimum, Plaintiff should be required to state

22  identify the delay, which is absent

23  from the Complaint. Accordingly, this claim should be dismissed.

24  **5.   Plaintiff Fails To State A Claim Under the Rehabilitation Act or ADA**

13

Title II of the ADA prohibits governments from discriminating against persons with disabilities by "exclud[ing]" such persons from participation in government "programs, services, or activities." 42 U.S.C. § 12132 (1990). Similarly, the Rehabilitation Act prohibits public entities from "exclud[ing]" disabled persons from "any program or activity receiving Federal financial assistance." 29 U.S.C. 794. "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045, n.11 (9th Cir. 1999).

To state a claim under Title II and the Rehabilitation Act, a plaintiff must plead facts plausibly establishing: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs[,] or activities . . .; and (3) such exclusion [or] denial of benefits . . . was by reason of his disability." *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis removed). A plaintiff alleging violation of the Rehabilitation Act must plead additional facts establishing that the specific governmental program at issue received federal funding at the time of the alleged violation. *See Sharer v. Oregon*, 581 F.3d 1176, 1180 (9th Cir. 2009); *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997) ("a plaintiff must allege that the specific program or activity with which he or she was involved receives . . . federal financial assistance.").

Plaintiff fails to state a Title II or Rehabilitation Act claim because he has not adequately pled a qualified disability or a reasonable accommodation available to the officers at the time, nor has he pled facts establishing that the City excluded him from or denied him the benefits of any service, program, or activity.

### a. *Plaintiff's ADA Claim Fails*

Plaintiff's ADA theory is evidently that police officers were required to accommodate him in some unspecified way for some unspecified "physical and mental impairment" while arresting him

for a violent crime. That is not a valid theory.

As an initial matter, Plaintiff has not adequately alleged a disability. Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C § 12102(1). Plaintiff does not allege a disability consistent with this definition, and simply stating that he "suffers from physical and mental impairment," (Compl. ¶116), does not, without more, plausibly allege a disability within the scope of the ADA. *See Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351, 1354, n.2 (9th Cir. 1996) ("disability" is "term of art" under ADA). To the extent that Plaintiff alleges that he was disabled from being shot, this is insufficient for purposes of alleging an ADA claim. An ADA claim can only be made based on a known or existing disability, not one that is allegedly caused by a police officer during an encounter or arrest.

The Ninth Circuit Court of Appeals' decision in *Sheehan v. City & Cty. of San Francisco,* 743 F.3d 1211 (9th Cir. 2014), held for the first time that "Title II of the Americans with Disabilities Act applies to arrests." *Id.* at 1217. The court's holding arose from a police action to detain a woman on a mental-health hold under California Welfare & Institutions Code section 5150 and police were informed upon arrival at the woman's mental-health group home that she "gravely [mentally] disabled" prior to their encounter with her. *See id.* at 1217–18. The officers were also aware that the woman was confined to her room with no other people, and that she could not exit her room except by a window that required a ladder. *Id.* The officers entered the woman's room to take her into custody and found her lying on her bed with a book. *Id.* at 1218. The woman responded by approaching them with a knife while yelling and then closing the door on officers after they retreated to the hallway. *Id.* at 1219. The officers then called for backup. *Id.* But "[r]ather than waiting for backup to arrive, [] the officers decided forcibly to reenter" the woman's room. *Id.* The woman again

threatened the officers with a knife, and when she got close to them, they shot her several times. *Id.* at 1220.

The woman sued the officers, alleging violation of the ADA (among other claims). *Id.* Her theory of ADA liability was that the officers failed reasonably to accommodate her disability when they reentered her room instead of waiting for backup, after which time they could have "employ[ed] tactics that would have been likely to resolve the situation without injury to herself or others." *Id.* at 1232. In a brief analysis, the court first established that it "agree[d] with the majority of circuits to have addressed the question that Title II applies to arrests." *Id.* But the court made clear that the ADA would not require accommodation in all arrests, because "exigent circumstances inform the" question whether such accommodation would be "reasonabl[e]." *See id.* Applying that standard to the facts before it, the court held that the officers may have violated the ADA when, *despite their knowledge of the woman's serious mental illness and the lack of immediate danger* that she would escape to harm others, the officers "forced their way back into her room" the second time rather than "wait[ing] for backup and employ[ing] less confrontational tactics." *Id.* at 1233 (emphasis added).

As an initial matter, *Sheehan* does not apply here where there are no allegations that the officers became aware during their encounter with Ochoa that he suffered from some disability (or even what disability Ochoa claims to have been affected by). But even if *Sheehan* applied, the Complaint does not allege the necessary facts to establish an ADA violation.

While the Ninth Circuit has not issued further guidance on the *Sheehan* holding, several district courts have set forth the requirements for the Title II claim it recognized. First, a plaintiff seeking to state an ADA claim under the theory that officers failed reasonably to accommodate his disability during an arrest "bears the initial burden of alleging, and ultimately proving, that a reasonable accommodation exists." *Hui Jie Jin v. Alameda Cty.*, 2019 WL 7831143, at *8 (N.D. Cal. Feb. 4, 2019). To accomplish this, the "plaintiff must identify 'specific reasonable' and 'necessary'

accommodations that the defendant failed to provide." *Sweiha v. Cty. of Alameda*, 2019 WL 4848227, at *6 (N.D. Cal. Oct. 1, 2019) (granting motion to dismiss Title II claim based on failure to accommodate during an arrest).

Second, the plaintiff must plead facts establishing that the alleged failure to accommodate "caused her to suffer greater injury or indignity than others" who are not disabled. *Juricich v. Cty. of San Mateo*, 2020 WL 619840, at *6 (N.D. Cal. Feb. 10, 2020); *Hui Jie Jin*, 2019 WL 7831143 at *8 (dismissing complaint where plaintiff failed to "allege how the failure to provide [proposed accommodations] during the arrest caused her to suffer greater injury or indignity in that process than other arrestees") (internal quotations omitted).

Third, where (as here) the plaintiff is seeking damages under the ADA, she must allege facts establishing "intentional discrimination on the part of the defendant" officers. *Hall v. City of Walnut Creek*, 2020 WL 408989, at *5 (N.D. Cal. Jan. 24, 2020) (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001)); *Sweiha*, 2019 WL 4848227 at *6 (same). This is different from the question whether the officers failed to accommodate—it requires the plaintiff to plead facts showing the relevant officer acted with "an element of deliberateness" in violating Title II. *See Hall*, 2020 WL 408989 at *5.

In addition to the fact that Plaintiff has not alleged a valid disability, he has not identified *any* "reasonable and necessary" accommodation the officers arresting him should have taken." *See Sweiha*, 2019 WL 4848227 at *6 (internal quotations omitted). Nor could he, because there is no accommodation that would have been reasonable under the rapidly unfolding circumstances he alleges. *Cf. Harper v. Cty of Merced*, 2020 WL 243118, at *9 (E.D. Cal. Jan. 16, 2020) (plaintiff who "disregarded" officer orders and resisted arrest "was not denied the benefit of reasonable accommodation" under the circumstances).

For example, Plaintiff claims that the Officers should have stopped using force when "it was

17

apparent he had been shot and injured, non-threatening, and attempting to surrender." (Compl. ¶118.) As an initial matter, it is unclear what force Plaintiff is referring to here – was it Officer Mosunic's use of force or some other officer's use of force? Additionally, there are no facts in the Complaint that indicate at what point it supposedly became apparent to the officers that Plaintiff had been shot and no longer posed a threat. As a matter of common sense, it is likely that officers were not able to confirm that Plaintiff was unarmed and no longer a threat until after he was taken into custody and searched. There was no reasonable accommodation, and Plaintiff does not identify any, that could have been made prior to that time. The Complaint does not allege that any force was used after Plaintiff was taken into custody.

Next, Plaintiff claims that he was denied reasonable accommodation because the officers did not "expeditiously" take him into custody and delayed access to medical care. But there are no facts in the Complaint that establish these conclusory allegations. Indeed, the Complaint acknowledges the opposite - Plaintiff finally exited his vehicle at 9:45 p.m. (Compl., ¶65), was taken into custody two minutes later at 9:47 (Compl., ¶67), and transported to the hospital (Compl., ¶78).

Plaintiff also fails to allege facts establishing that he suffered "greater injury or indignity [] than other arrestees." *Hui Jie Jin*, 2019 WL 7831143 at *8. Plaintiff's claim is that officers used excessive force in a way that caused him injuries. Those are the same injuries any "other arrestees" raising an excessive force claim would allege. *See id.* They do not distinguish Plaintiff's claim based on his alleged disability. *See id.*; *Razavi v. Martins*, 2018 WL 1933482, at *3 (N.D. Cal. Apr. 24, 2018) (dismissing ADA claim where the plaintiff did "not include facts alleging that [the arresting officer] caused her to suffer greater injury or indignity than others").

Finally, Plaintiff alleges no facts that could establish "intentional discrimination" by the police officers who arrested him. *See Hall*, 2020 WL 408989 at *5. Plaintiff may not rely on conclusory allegations that the officers had an impermissible state of mind at the time of his arrest.

18

*See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (The "bald allegation of impermissible motive on [a defendant's] part, standing alone, is conclusory and is therefore not entitled to an assumption of truth" at the pleading stage). To plausibly plead the "element of deliberateness," Plaintiff would have to demonstrate at a minimum that the officers arresting him were aware of his disability and the "specific[,] reasonable" accommodations it necessitated but nevertheless acted with "deliberate indifference, by withholding" them. *See Sweiha*, 2019 WL 4848227 at *6. Plaintiff has not, and he could not plausibly do so, primarily because he has not identified any actual disability but also because he has not alleged that the officers were aware of his alleged, unidentified disability. *Cf. Hall*, 2020 WL 408989 at *6 (dismissing ADA claim for failure to plead intentional discrimination even though plaintiffs pleaded that officers were aware of their disabilities because the complaint "fail[ed] to allege facts making deliberate indifference more than merely possible").

In sum, Plaintiff has alleged in his ADA claim only that he suffered from some vague physical and mental disability, with no indication how officers could have known he had such a disability, and that police officers failed to accommodate him, with no apparent  reasonable accommodation that officers could have taken given the nature of the event and the rapidly unfolding circumstances. Plaintiff has pled no facts to convert his excessive force allegation into an ADA violation. Accordingly, his Title II claim fails.

### b.   *Plaintiff's Rehabilitation Act Claim Fails*

As noted, the Rehabilitation Act authorizes claims against public entities only on a program-by-program basis. *See Sharer*, 581 F.3d at 1180. That the City of San Jose allegedly receives financial assistance does not render every department or entity within the City a "program or activity" subject to the Act. *See id.* Plaintiff's Rehabilitation Act claim fails for the same reason his ADA claim fails—i.e., because he has not alleged facts showing denial or exclusion from a public

19

program. But it also fails because Plaintiff has not alleged the City receives federal funding for a particular police program from which he was excluded. *See id.*; *see also Lightbourn*, 118 F.3d at 428.

### 6.   The Complaint Fails to State a Claim Under the Bane Act

The Bane Act makes actionable "interfere[nce] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state …." Cal. Civ. Code § 52.1. "[T]he statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Cornell v. City & Cty. of San Francisco*, 17 Cal.App.5th 766, 800 (Cal. App. 2017), *as modified* (Nov. 17, 2017), *review denied* (Feb. 28, 2018). A Bane Act violation requires a plaintiff to prove that officers "commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quotation omitted); *see also* Jud. Council of Cal. Civil Jury Instr. 3066 (Bane Act—Essential Factual Elements). That means a plaintiff must show officers "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (quotation omitted). Claims, like those asserted in the Complaint, that a defendant acted with "deliberate indifference and reckless disregard of [Plaintiff's] rights" are "conclusory and general allegations" and "are insufficient to support a Bane Act claim …." *Jaime-Gonzalez v. Cty. of Los Angeles*, 2018 WL 8058840, at *11 (C.D. Cal. Dec. 26, 2018).

Here, the Complaint lacks any facts to establish the necessary "specific intent" of the officer to violate Plaintiff's constitutional rights—he simply makes conclusory allegations and restates the

20

DEFENDANTS' MOTION TO DISMISS CERTAIN OF PLAINTIFF'S                                    5:21-cv-02456-BLF
CLAIMS; NOTICE, MOTION, AND MEMORANDUM IN SUPPORT                                       1840198

1    legal standards under the Fourth Amendment for excessive force, failure to render reasonable

2    medical care, and the ADA/Rehabilitation Act. (Compl. ¶¶136-138.) Plaintiff makes the same

3    generic claims (Compl. ¶135) that the Court held in *Jaime-Gonzalez* were insufficient to state a Bane

4    Act violation.

5    **7.   Plaintiff fails to state an IIED claim against Defendants**

6        The tort of IIED makes actionable emotional harm that a person intentionally or recklessly

7    inflicts by outrageous conduct. *See* Restatement (Second) of Torts § 46. (1965) "The elements of a

8    prima facie case of intentional infliction of emotional distress in California are (1) extreme and

9    outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

10   probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

11   distress; and (3) actual and proximate causation of the emotional distress by the defendant's

12   outrageous conduct." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (internal quotations

13   omitted). Virtually every intentional tort will, as alleged, inflict emotional distress (often by

14   outrageous conduct) on its subject, but the advent of IIED was not intended to supplant or subsume

15   all other common-law torts. Rather, IIED only "creates liability only where the actor *intends* to

16   invade the interest in freedom from severe emotional distress." Restatement (Second) of Torts § 47

17   (1965) (emphasis added).

18       Here, Plaintiff does not—and could not—allege that the police officers arresting him in the

19   course of their ordinary duties "act[ed] as they did for the purpose of causing emotional injury to"

20   him. *See Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (Cal. 1982). The Complaint simply

21   restates the law summarily concluding that the "law enforcement officers engaged in outrageous

22   conduct which caused [Plaintiff] to experience severe emotional distress." (Compl. ¶151.) The

23   Complaint does not even specify what outrageous conduct Plaintiff is referring to. But even if it

24   were true that the officers used more force than appropriate within the meaning of the Fourth

                                                    21

Amendment or common-law battery principles, that would not suggest officers had the particular intent to create severe emotional distress in Plaintiff. Certainly, it would not suggest the officers harbored "only" that intent. Rather, the only plausible inference from the facts Plaintiff alleges is that the officers' actions were motivated by the desire to protect themselves and others from Plaintiff's assaultive conduct. Plaintiff has accordingly failed to plead facts sufficient to support his IIED claim.

To the extent that the officers are not liable for IIED, neither can the Chief of Police nor the City be held liable for the same reasons.

## V.    **CONCLUSION**

For the aforementioned reasons, the Defendant respectfully requests that the Court dismiss all counts against former Chief Garcia; the Second Count, brought against Doe Defendants; the Seventh and Ninth Counts against Officer Eric Mosunic; and the First, Third, Fourth, Sixth, Seventh, and Ninth Counts against the City.


NORA FRIMANN, City Attorney


Dated:  July 20, 2021                    By:  */s/ Kendra E. McGee*
                                         KENDRA E. MCGEE
                                         Senior Deputy City Attorney

                                         Attorneys for Defendants City of San Jose,
                                         Police Chief Edgardo Garcia, Officer Eric
                                         Mosunic

**PROOF OF SERVICE**

CASE NAME:  _Yuridia Ochoa v. City of San Jose, et al._
CASE NO.:  5:21-cv-02456-BLF

    I, the undersigned declare as follows:

    I am over 18 years of age and not a party to this action.  My business address is 200 East Santa Clara Street, San Jose, California 95113-1905, and is located in the county where the service described below occurred.

    On July 20, 2021, I caused to be served the within:

    **1.  DEFENDANTS' MOTION TO DISMISS CERTAIN OF PLAINTIFF'S CLAIMS; NOTICE, MOTION, AND MEMORANDUM IN SUPPORT**

☐  by MAIL, with a copy of this declaration, by depositing them into a sealed envelope, with postage fully prepaid, and causing the envelope to be deposited for collection and mailing on the date indicated above.

    I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service.  Said correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

☒  by ELECTRONIC SERVICE listed below, transmitted using the CM/ECF electronic filing system. The document(s) listed above was/were electronically served to the electronic address(s) below

☐  by ELECTRONIC TRANSMISSION, with a copy of this declaration, to an electronic address listed below.

Addressed as follows:

Mark E. Merin, Esq.
Paul Masuhara, Esq.
Law Office of Mark E. Merin
1010 F Street, Suite 300
Sacramento, CA 95814
mark@markmerin.com
paul@markmerin.com

_Attorneys for Yuridia Ochoa_

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on July 6, 2021, at San Jose, California.

                                    _/s/ Brandi Lecomte_
                                      Brandi Lecomte

PROOF OF SERVICE