1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| YURIDIA OCHOA,<br><br>            Plaintiff,<br><br>     v.<br><br>CITY OF SAN JOSE, et al.,<br><br>            Defendants. | Case No.  21-cv-02456-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COMPLAINT**<br><br>[Re:  ECF No. 20] |

Before the Court is Defendants City of San Jose, San Jose Police Department, Edgardo Garcia, and Eric Mosunic's motion to dismiss Plaintiff Yuridia Ochoa's initial complaint.  This case arises from Plaintiff's arrest by San Jose Police Department police officers on June 2, 2020.  During his arrest, Plaintiff alleges Officer Eric Mosunic shot him multiple times and other unidentified officers used excessive force, including deploying a flashbang grenade, and delayed providing him medical care in violation of his Fourth Amendment rights.  Plaintiff brings claims under § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Tom Bane Civil Rights Act ("Bane Act"), and California state law for assault, battery, intentional infliction of emotional distress, and negligence against Officer Mosunic and unidentified officers Doe 1 to 5 ("Doe Defendants") (collectively, "Arresting Officers"), the former Police Chief of the San Jose Police Department Edgardo Garcia ("Chief Garcia"), additional unidentified officers Doe 6 to 10, the San Jose Police Department, and the City of San Jose (the "City").

Defendants move to dismiss (1) all counts against Chief Garcia, including the § 1983, Bane Act, assault and battery, intentional infliction of emotional distress, and negligence claims; (2) the § 1983, Bane Act, and intentional infliction of emotional distress claims against Doe Defendants; (3) the Bane Act and intentional infliction of emotional distress claims against Officer Mosunic; and

(4) the § 1983, Rehabilitation Act, ADA, Bane Act, and intentional infliction of emotional distress claims against the City.  *See* ECF No. 20.  Defendants also move to dismiss the San Jose Police Department as a defendant.  *Id.* at 1 n.1.

The Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I.   BACKGROUND

### A.   June 2, 2020 Arrest

Plaintiff alleges the following regarding his arrest on June 2, 2020.  Around 9:00 P.M., Plaintiff was performing "donuts" in his vehicle in a "sideshow" at an intersection near City Hall in San Jose, California.  Complaint ("Compl."), ECF No. 1 ¶¶ 12-13.  Plaintiff fled the scene when San Jose Police Department officers arrived and attempted to pull him over.  *Id.* ¶¶ 14-15.  Sergeant Greg Connolly and Defendant Eric Mosunic, both police officers with the San Jose Police Department, pursued Plaintiff on police motorcycles.  *Id.* ¶ 16.  As he fled, Plaintiff struck pedestrian Adrianna Saralla as she crossed the street, causing her to sustain a broken ankle and a cut on her face.  *Id.* ¶ 18.  Plaintiff continued to flee after the collision, and Sergeant Connolly and Defendant Mosunic continued pursuing Plaintiff.  *Id.* ¶¶ 19-20.

Sergeant Connolly and Defendant Mosunic pursued Plaintiff to Mission Street, where Plaintiff pulled into a parking lot of a housing complex.  *Id.* ¶¶ 22-24.  Plaintiff came to a dead end in the parking lot.  *Id.* ¶¶ 25-26.  Around 9:34 P.M., Defendant Mosunic approached Plaintiff's car and parked his motorcycle near the rear of Plaintiff's car on the driver's side, outside of the path of Plaintiff's vehicle.  *Id.* ¶¶ 29, 31-32.  Defendant Mosunic dismounted from his motorcycle, drew his pistol, and turned on his body camera.  *Id.* ¶¶ 30.  The ensuing incident was recorded by Defendant Mosunic's body camera and by a bystander located in a building several floors above the parking lot.  *Id.* ¶ 28.

Defendant Mosunic approached the driver's side of Plaintiff's car on foot with his gun pointed at Plaintiff, who was sitting in his car at a complete stop.  *Id.* ¶¶ 33-34.  Defendant Mosunic yelled at Plaintiff to put his hands up and turn the car off.  *Id.* ¶¶ 35, 37.  Plaintiff did not respond and remained seated in his car.  *Id.* ¶ 36.  Defendant Mosunic returned to his motorcycle and took cover behind it while continuing to point his pistol at Plaintiff.  *Id.* ¶ 39.  Defendant Mosunic

United States District Court
Northern District of California

1    received a radio message informing him that additional officers were on their way to his location,

2    which Defendant Mosunic acknowledged before saying over his radio that he had Defendant pinned

3    in the back of a garage.  *Id.* ¶¶ 40-41.

4          Plaintiff began moving his car slowly in reverse.  *Id.* ¶ 42.  Defendant Mosunic yelled,

5    "Don't move!  Don't move!"  *Id.* ¶ 43.  Defendant Mosunic then fired his pistol six times at

6    Plaintiff's vehicle, striking Plaintiff.  *Id.* ¶¶ 44-45.  Plaintiff stopped his vehicle, and Defendant

7    Mosunic continued to command Plaintiff not to move.  *Id.* ¶¶ 46-47.  Plaintiff began to move his

8    vehicle slowly in reverse a second time, and Defendant Mosunic fired his pistol six more times at

9    Plaintiff's vehicle, again striking Plaintiff.  *Id.* ¶¶ 48-49.  Again, Plaintiff stopped his car, and

10   Defendant Mosunic continued commanding Plaintiff not to move. *Id.* ¶¶ 51-52.  Plaintiff began to

11   move slowly in reverse a third time, and Defendant Mosunic fired his pistol three more times at

12   Plaintiff's car, further striking Plaintiff.  *Id.* ¶¶ 53-55.  Plaintiff brought his vehicle to a stop.  *Id.* ¶ 56.

13   He had been struck by six bullets, sustaining gunshot wounds to his left arm, shoulder, and neck.

14   *Id.* ¶¶ 58-59.  Plaintiff alleges that Defendant Mosunic violated the policies and procedures of the

15   San Jose Police Department by shooting at him, including Policy L 2600 ("Use of Force") and

16   Policy L 2641.5 ("Shooting at Moving Vehicles").  *Id.* ¶ 60.

17         Around 9:36 P.M., Defendant Mosunic walked several yards away from Plaintiff to meet

18   additional San Jose Police Department officers arriving at the scene.  *Id.* ¶ 61.  Around 9:42 P.M.,

19   Plaintiff held his arms and empty hands outside of the window of his vehicle.  *Id.* ¶ 64.  Around

20   9:45 P.M., Plaintiff opened the driver-side door of his vehicle.  *Id.* ¶ 65.  Doe Defendants, officers

21   with the San Jose Police Department, deployed a flashbang grenade once Plaintiff opened the door

22   of his vehicle.  *Id.* ¶ 66.  The flashbang grenade exploded near Plaintiff, injuring him and causing

23   him to yell in pain.  *Id.* ¶¶ 67-68.  Plaintiff alleges that Doe Defendants violated the San Jose Police

24   Department's policies and procedures by deploying the flashbang grenade, including Policy L 2600

25   ("Use of Force") and Policy L 2629 ("Use of Projectile Impact Weapons").  *Id.* ¶ 69.

26         Doe Defendants instructed Plaintiff to walk towards them with this hands up, which he did.

27   *Id.* ¶ 71.  Around 9:46 P.M., when Plaintiff was around 25 to 30 feet from Doe Defendants, they

28   instructed him to get down on the ground on his hands and knees and crawl until he reached Doe

United States District Court
Northern District of California

1    Defendants.  *Id.* ¶¶ 71-72.  Plaintiff complied.  *Id.* ¶ 72.  As Plaintiff crawled toward the officers,

2    they "milled about," turned their backs to Plaintiff, and conversed with other officers, which Plaintiff

3    alleges showed that they did not consider him a threat.  *Id.* ¶ 73.  Plaintiff alleges that commanding

4    Plaintiff to crawl towards them served no legitimate law enforcement purpose because Plaintiff was

5    clearly unarmed, non-threatening, and injured.  *Id.* ¶ 74.  Further, Plaintiff alleges Doe Defendants

6    violated the San Jose Police Department's policies and procedures, including Policy L 2602.5

7    ("Tactical Conduct") and Policy L 2608.6 ("Providing First Aid").  *Id.* ¶ 75.

8         Around 9:47 P.M., San Jose Police Department officers took Plaintiff into custody.  *Id.* ¶ 76.

9    Plaintiff was in pain, so he asked Doe Defendants to pick him up.  *Id.* ¶ 77.  Doe Defendants dragged

10   Plaintiff on the ground.  *Id.* ¶ 77.  Plaintiff was then transported to a hospital, and he has since been

11   in custody.  *Id.* ¶¶ 78, 81.

12        **B.    August 28, 2020 "Community Briefing" Video**

13        On August 28, 2020, the San Jose Police Department posted a video on its publicly available

14   YouTube page regarding the June 2, 2020 incident involving Plaintiff.  *Id.* ¶ 82.  Plaintiff alleges

15   that the San Jose Police Department and Defendant Garcia published the video in an "attempt to

16   negatively portray Plaintiff…to the public and to imply that Defendant [Mosunic's] shooting was

17   justified."  *Id.* ¶ 88.

18        Plaintiff also alleges that the video contained false, misleading, and irrelevant information.

19   *Id.* ¶¶ 86-88.  The video included an edited version of Defendant Mosunic's body camera footage

20   of the June 2, 2020 incident.  *Id.* ¶ 82.  The video included a statement from Chief Garcia, who

21   described the video as a "community briefing" of the incident involving Plaintiff that will "walk

22   you through relevant video footage and evidence."  *Id.* ¶ 84.  Plaintiff alleges that this statement was

23   false and misleading, since the purpose of the video was in fact to negatively characterize him and

24   imply his shooting was justified.  *Id.* ¶ 88.  The video also included statements from Lieutenant

25   Brian Shab about the June 2, 2020 incident that Plaintiff alleges are "demonstrably false based on

26   available evidence, including body-worn camera footage."  *Id.* ¶ 86.  Plaintiff alleges these false

27   statements include the following:  (1) "The suspect fled again, this time striking an officer on a

28   police motorcycle, knocking that officer to the ground"; (2) "[t]he suspect ignored the commands,

United States District Court
Northern District of California

and drove in the direction of the officer"; and (3) "in defense of his own life, the officer fired at the suspect three separate times." *Id.* Additionally, the video provided information about some of Plaintiff's prior criminal convictions. *Id.* ¶¶ 83, 87. Plaintiff alleges his prior criminal convictions were irrelevant, because Defendant Mosunic did not know Plaintiff's identity at the time of the June 2, 2020 incident. *Id.* ¶ 87.

### C.    Procedural History

Plaintiff initiated this action on April 6, 2021. ECF No. 1. Defendants filed their Motion to Dismiss on July 20, 2021. Motion ("Mot."), ECF No. 20. Plaintiff filed an Opposition on August 3, 2021. Opposition ("Opp'n"), ECF No. 24. Defendants filed a Reply on August 10, 2021. Reply, ECF No. 27. The Court held a hearing on the motion to dismiss on September 23, 2021.

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a plaintiff has stated a claim, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.

United States District Court
Northern District of California

*Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III. DISCUSSION

### A. Threshold Matters

#### i. San Jose Police Department

Defendants argue that the San Jose Police Department is a duplicative defendant because it is a department within the City of San Jose and the claims against the Police Department and the City arise from the same facts. Reply at 1; Mot. at 1 n.1. Plaintiff argues that police departments are public entities that can be sued in federal court. Opp'n at 1. While Plaintiff is correct, the issue here is not whether police departments can be sued in federal court—it is whether the San Jose Police Department is a duplicative party in this case. The Court finds that it is. The City is already accused of the same claims premised on the same facts. *See, e.g.*, *Carroll v. City of Hercules*, No. C-11-3378, 2012 WL 1122019, at *2 (N.D. Cal. Apr. 3, 2012). The Court hereby GRANTS Defendants' motion to dismiss all claims against the San Jose Police Department WITHOUT LEAVE TO AMEND.

At the September 23, 2021 hearing, Plaintiff raised concerns that if the San Jose Police Department were not named as a party to this suit, it may impact the scope of discovery, because the Department may fail to comply with subpoenas. The Court's dismissal of the Police Department in no way reduces the scope of permissible discovery. Accordingly, the Court hereby ORDERS that the scope of discovery SHALL be just as broad as if the Department were kept as a party to this case.

### B. Excessive Force

Plaintiff claims that the Arresting Officers used excessive force during Plaintiff's arrest in violation of 42 U.S.C. § 1983 based on his Fourth Amendment rights. Claim 1, Compl. at 16-17. Plaintiff also claims that the City is liable under *Monell*, and that Chief Garcia is liable based on supervisory liability for Arresting Officers' excessive force. *Id.*; *see Monell v. Dep't of Soc. Serv's*, 436 U.S. 658 (1978). Defendants seek to dismiss the excessive force claim against the City and

United States District Court
Northern District of California

1    Chief Garcia.  Mot. at 5-13.  Defendants state they do not seek to dismiss the excessive force claim

2    against Officer Mosunic.  Mot. at 2 n.3.  It also appears that Defendants do not seek to dismiss the

3    excessive force claim against Doe Defendants.

4          Defendants rightfully assert that Plaintiff's claim for excessive force, Claim 1, is unclear as

5    to which parties are alleged to be liable under which theories.  Plaintiff muddles public agency

6    *Monell* liability with individual officers' liability for actual, physical excessive force.  And the

7    claims against Chief Garcia in Claim 1 are virtually indecipherable.

8          **i.    City of San Jose**

9          "The Supreme Court in *Monell* held that municipalities may only be held liable under section

10   1983 for constitutional violations resulting from official…policy or custom."  *Benavidez v.*

11   *Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell*, 436 U.S. at 694).  "[P]olicies

12   can include written policies, unwritten customs and practices, failure to train municipal employees

13   on avoiding certain obvious constitutional violations, … and, in rare instances, single constitutional

14   violations [that] are so inconsistent with constitutional rights that even such a single instance

15   indicates at least deliberate indifference of the municipality[.]"  *Id.* at 1153 (internal citations

16   omitted).  "A municipality may [also] be held liable for a constitutional violation if a final

17   policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  "In

18   order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that

19   [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality

20   had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional

21   right; and, (4) that the policy is the moving force behind the constitutional violation.'"  *Dougherty*

22   *v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alterations in original) (quoting *Plumeau v.*

23   *Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

24          **a.  *Monell* Claim – Policy**

25          Plaintiff alleges in his Complaint that the alleged excessive force at issue in this case resulted

26   from the "existence of a policy or custom."  Opp'n at 2.  In his Opposition and at the September 23,

27   2021 hearing on Defendants' Motion, Plaintiff conceded that he is not asserting a *Monell* claim

28   based on a formal policy.  Opp'n at 2.

### b. *Monell* Claim – Custom or Practice

Plaintiff pleads that the alleged constitutional violations of Arresting Officers resulted from a custom or practice permitting or encouraging personnel's use of unreasonable and excessive force. Compl. ¶¶ 91, 92, 100.  Plaintiff supports his custom or practice allegations by pointing to the circumstances of his arrest, *id.* ¶ 93, and twelve "incidents involving other uses of unreasonable and excessive force" by San Jose Police Department officers, all of which occurred during Chief Garcia's employment by the Department and several of which occurred during his tenure as Police Chief.  *Id.* ¶¶ 89, 94.  Plaintiff alleges the City and Chief Garcia were aware of these and other incidents, but they "repeatedly refused or failed to take appropriate corrective action, including discipline, re-training, and/or changes to policies or procedures," turning a "blind eye to the abuses." *Id.* ¶¶ 95-96.

A municipality may be held liable on the basis of an unconstitutional policy if a plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)).  "Liability for improper custom may not be predicated on isolated or sporadic incidents"—rather, "[t]he custom must be so persistent and widespread that it constitutes a permanent and well settled city policy."  *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996) (internal citations omitted).  In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, customs, or habits."  *Warner v. Cty. of San Diego*, No. 10-1057, 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011).

Defendants argue that Plaintiff provides only vague, conclusory allegations and recitations of the legal standard regarding the alleged custom or practice. Mot. at 10-11; Reply at 2.  Defendants argue that the only facts Plaintiff provides are in a list of lawsuits and "unsubstantiated" complaints against the San Jose Police Department.  Mot. at 10-11; Reply at 3-6.  Defendants argue that these facts are inadequate to meet the pleading standard for Plaintiff's *Monell* claim, since Plaintiff does not adequately allege that these prior complaints involved similar incidents, whether they were

United States District Court
Northern District of California

1  sustained or warranted, whether they involved the same officers, or whether the City failed to

2  discipline or retrain the officers responsible.  Mot. at 10; Reply at 4-6.  Plaintiff argues that he has

3  pled sufficient facts regarding past lawsuits and complaints against the San Jose Police Department

4  to support his *Monell* claim, because these are sufficient support for the alleged culture regardless

5  of whether they involved complaints that were sustained or warranted.  Opp'n at 3.  Plaintiff also

6  argues that the facts of the underlying incident alone in this case—involving "multiple harms" and

7  the "violation of multiple official policies" caused by "multiple officers" in a "public place"—

8  sufficiently support the existence of a custom or practice for his *Monell* claim.  Opp'n at 2.

9       The Court agrees with Plaintiff that he has properly pled a *Monell* claim against the City

10  based on a custom or practice.  The Court finds that the past incidents Plaintiff has pointed to are

11  sufficient to plausibly plead a "persistent and widespread" custom of "permitting or encouraging

12  personnel's use of unreasonable and excessive force" as Plaintiff alleges, and that the custom

13  amounted to deliberate indifference as to Plaintiff's constitutional rights and was the moving force

14  behind the violations he alleges.  *Trevino*, 99 F.3d at 918.  The Court is satisfied that several of the

15  incidents show significant facial similarities to the alleged facts of Plaintiff's arrest.  *See, e.g.*,

16  *Breen v. City of Concord*, No. 19-cv-05622-SK, 2019 U.S. Dist. LEXIS 226890, at **8-10 (N.D.

17  Cal. Dec. 10, 2019) ("[H]ighly detailed allegations from factually pertinent cases presented by

18  Plaintiff in support of his *Monell* claim are more than sufficient to survive Defendants' motion to

19  dismiss"); *Lemus v. Cty. of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4

20  (E.D. Cal. May 19, 2016) ("[W]here more than a few incidents are alleged, the determination

21  appears to require a fully-developed factual record."), *aff'd on other grounds*, 711 Fed. App'x 859

22  (9th Cir. 2017); *see also Zaragoza v. Cty. of Riverside*, No. EDCV 20-1381 JGB (SPx),

23  2021 WL 968967, at *4 (C.D. Cal. Feb. 18, 2021) ("If Plaintiffs were able to plead a pattern of

24  similar incidents, such as previous excessive force incidents within the County, such allegations

25  would serve a valuable function in the scheme of their *Monell* claims.")  For example, multiple

26  incidents allegedly involve officers firing weapons at vehicles and complaints of excessive force in

27  pursuits, including against unarmed suspects.  *See, e.g.,* Compl. ¶¶ 94(g), 94(i), 94(j), 94(k).

28       Defendants quibble with the factual similarity of several of these prior incidents, *see, e.g.*,

9

United States District Court
Northern District of California

1  Reply at 4-5, but the Court finds that the issues Defendants raise are too granular for the pleading

2  stage.   *See Estate of Osuna v. Cty. of Stanislaus*, No. 1:18-cv-01240-DAD-SAB,

3  392 F.Supp.3d 1162, 1173 (E.D. Cal. June 25, 2019) ("Whether these previous cases are all

4  manifestations of the same policy or custom, and whether that policy or custom was the moving

5  force behind the injury to decedent in this case, are factual issues to be determined following the

6  discovery phase of this litigation."); *McCoy v. City of Vallejo*, No. 2:19-cv-001191-JAM-CKD,

7  2020 WL 374356, at *4 (E.D. Cal. Jan. 23, 2020) ("Defendants' attempt to differentiate these

8  instances through surrounding circumstance…is unavailing.")   Further, Defendants argue that

9  Plaintiff must plead details regarding lack of retraining or discipline following the prior incidents

10  listed in his complaint.  *E.g.*, Reply at 4.  But these are the kinds of facts regarding the City's internal

11  policies and decision-making that Plaintiff will be in a better position to provide following

12  discovery.  *Osuna*, 392 F.Supp.3d at 1173.

13         Defendants also object that Plaintiff's cited incidents span the last 20 years and include

14  complaints that were not necessarily sustained.  Reply at 1-5.  But in the Court's view, these aspects

15  of Plaintiff's cited incidents tend to support Plaintiff's position—older excessive force incidents

16  support the existence of a longstanding culture, and the fact that complaints were not sustained could

17  support a systematic failure to address the kinds of constitutional violations Plaintiff is alleging.

18  Further, Plaintiff alleged that several of the incidents described in the Complaint ended with

19  substantial settlements or judgments.  *See* Compl. ¶¶ 94(h) ($2,950,000 settlement following

20  $2,645,000 judgment), 94(b) ($1,825,000 settlement), 94(c) ($1,000,000 judgment), 94(e)

21  ($900,000 settlement), 94(d) ($200,000 settlement).  Defendants' cited cases involve pleadings that

22  allege far less.  *See, e.g.*, *Hocking v. City of Roseville*, No. S-06-0316 RRB EFB, 2008 WL 1808250,

23  at *5 (E.D. Cal. Apr. 22, 2008) ("Statistics of unsustained complaints of excessive force and other

24  police misconduct, without any evidence that those complaints had merit, does not suffice to

25  establish municipal liability under § 1983."); *Davis v. Clearlake Police Dep't.*,

26  No. C-07-03365 EDL, 2008 WL 4104344, at *8 (N.D. Cal. Sep. 3, 2008) ("Plaintiffs have not, for

27  example, provided evidence of the outcome of the lawsuits or any other details.")

28         One of the primary cases Defendants point to in support of their position is *Strauss v.*

10

*City of Chicago*, 760 F.2d 765 (7th Cir. 1985).  Mot. at 9-10; Reply at 3-4.  But *Strauss* is a Seventh Circuit case, and a history of prior incidents is enough to plead a *Monell* custom or practice claim in the Ninth Circuit.  *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (reversing dismissal where plaintiff "specifically alleges numerous incidents" of prior excessive force); *Price v. Sery*, 513 F.3d 962, 972-73 (9th Cir. 2008) ("longstanding use of deadly force in situations where the objective facts did not support such force" supported existence of custom) (internal citations omitted); *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018) (citing *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011)); *see also Creer v. Vallejo*, No. 2:14-cv-1428 JAM DAD PS, 2015 WL 3795027, at **6-7 (E.D. Cal. June 17, 2015) (collecting cases); *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train."); *Bagos v. Vallejo*, No. 2:20-cv-00185-KJM-AC, 2020 WL 6043949, at **5-6 (E.D. Cal. Oct. 13, 2020).  Otherwise, Defendants point to inapposite cases that have little bearing on the sufficiency of what Plaintiff has pled.  *See, e.g., Dudgeon v. Cty. of Sonoma*, No. 19-cv-05615-JCS, 2020 WL 663477, at *3 (N.D. Cal. Feb. 11, 2020) ("[T]here are no supporting facts alleging any particular instances of notice or a pattern of conduct."); *Walker v. Doe*, No. 1:19-cv-01546-LJO-SKO, 2019 WL 6790765, at **9-10 (citing "conclusory allegations" and failure to allege "any prior similar incidents"); *Major v. City and Cty. of San Francisco*, No. 15-cv-03426-KAW, 2017 WL 4419175, at *6 (N.D. Cal. Oct. 5, 2017) (no allegations that other cited actions "are even related").

In addition to prior incidents involving the San Jose Police Department, Plaintiff alleges facts related to the "Community Briefing" video, which he asserts was an attempt to "negatively portray" him publicly and to "imply that [his] shooting was justified."  Compl. ¶ 88.  The Court finds that the "Community Briefing" video allegations further support Plaintiff's custom or practice claim.  *See Nehad v. Browder*, 929 F.3d 1125, 1141-42 (9th Cir. 2019) (triable issue of fact as to *Monell* custom claim where police chief "explicitly affirmed that [officer's] shooting of [plaintiff] 'was the right thing to do'"); *Silva v. San Pablo Police Dep't*, 805 Fed.Appx. 482, 485 (9th Cir. 2020).

Plaintiff also argues that his allegations regarding his arrest are sufficient to support a *Monell* claim under the doctrine of "single incident liability." Opp'n at 2. Since the Court finds that Plaintiff's allegations regarding prior incidents are sufficient to support his *Monell* claim, the Court declines to consider whether his allegations regarding the circumstances of his arrest alone are sufficient to support his *Monell* claim.

Defendants' motion to dismiss the *Monell* claim against the City is DENIED.

### c. *Monell* Claim – Failure to Train

"Failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Long v. City of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. For example, if police activities in arresting fleeing felons "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers," then the city's failure to train may constitute "deliberate indifference." *Id.* at 390 n.10. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389. And only under such circumstances does the failure to train constitute "a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal citations omitted).

Defendants argue that Plaintiff has failed to meet the high pleading standard of a failure to train *Monell* claim, including by failing to allege that the prior incidents involving the San Jose Police Department "obvious[ly]" resulted from training deficiencies. Mot. at 12. Plaintiff argues that the prior incidents he points to in the Complaint show a pattern of incidents sufficient to plead

12

1    a failure to train.  Opp'n at 3-4.

2         The Court agrees with Plaintiff.  As outlined above, the Court finds that Plaintiff has

3    sufficiently alleged facts regarding prior similar incidents to plausibly satisfy the "deliberate

4    indifference" standard of a *Monell* claim.  To support their position that Plaintiff has failed to allege

5    sufficient facts about prior incidents, Defendants cite only to cases where similar incidents were not

6    adequately alleged.  *See Connick*, 563 U.S. at 61 ("[Plaintiff] does not contend that he proved a

7    pattern of similar…violations."); *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409

8    (1997) ("Respondent does not claim that she can identify any pattern of injuries[.]"); *Arteaga v. City

9    of Oakley*, No. 19-cv-05725-JCS, 2020 WL 511876, at *6 (N.D. Cal. Jan. 31, 2020) ("[Plaintiff] has

10   alleged no other similar incidents that would tend to support an inference that these policies were

11   'well settled.'"); *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) ("Neither [the

12   Sheriff] nor the County was faced with a pattern of similar constitutional violations by untrained

13   employees."); *Ayala v. Cty. of Imperial*, No. 15-cv-397-LAB (NLS), 2017 WL 469016, at **6-7

14   (S.D. Cal. Feb. 3, 2017) (dismissing claims based on "naked assertions without any factual

15   enhancement"); *Bauer v. City of Pleasanton*, No. 3:19-cv-04593-LB, 2020 WL 1478328, at *5

16   (N.D. Cal. Mar. 26, 2020) (insufficient to allege two prior incidents).

17        Defendants argue that Plaintiff is required to plead facts connecting his arrest or the past

18   incidents to training deficiencies.  Mot. at 6-7.  But the Court is not sure what Defendants expect

19   Plaintiff to plead at this point.  *See, e.g.,* Compl. ¶ 95.  At the pleading stage, Plaintiff is unlikely to

20   have details of how a police department trains its officers—these are the kinds of details that are

21   likely to emerge during discovery.  Further, the Court notes that based on Plaintiff's allegations

22   regarding the facts of some of the prior incidents—several of which facially involve outrageously

23   excessive acts of police violence—inadequate or deficient training is at least a reasonable inference.

24   The Court agrees with other courts in the Ninth Circuit that have found allegations about prior

25   incidents sufficient without the details Defendants seek.  *See, e.g., Breen*,

26   2019 U.S. Dist. LEXIS 226890, at **8-10; *McCoy*, 2020 WL 374356, at *4.

27             **d.  *Monell* Claim – Ratification**

28        "A municipality may be held liable for a constitutional violation if a final policymaker

ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it." *Id.* (internal quotation marks and citation omitted). The policymaker must have knowledge of the constitutional violation and actually approve of it – a failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim. *Id.* In other words, ratification requires an authorized policymaker to make a "conscious, affirmative choice" to endorse subordinate's actions. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). A policymaker's after-the-fact approval of a subordinate's conduct that caused the alleged constitutional violations may be used as evidence that a municipality had a pre-existing policy that caused the alleged constitutional violations. *Silva v. San Pablo Police Dep't*, 805 Fed.Appx. 482, 485 (9th Cir. 2020). To show that ratification was a "moving force" behind the constitutional deprivation, a plaintiff must demonstrate both causation in fact and proximate causation. *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Dougherty v. City of Covina*, 654 F.3d 892, 900-901 (9th Cir. 2011).

Plaintiff argues that the facts in the Complaint related to the San Jose Police Department's publicly distributed "Community Briefing" video—in which an officer stated that Officer Mosunic fired at Plaintiff "[i]n defense of his own life," allegedly misrepresented the facts of Plaintiff's arrest, and presented details of Plaintiff's criminal background—are sufficient to support a ratification claim. Opp'n at 4-5; *see* Compl. ¶¶ 82-88. Defendants argue that Plaintiff has alleged no facts indicating that a policymaking official endorsed or approved of any officer's conduct. Reply at 7-8.

The Court finds that Plaintiff's allegations regarding the "Community Briefing" video are sufficient to plausibly infer that policymakers at the San Jose Police Department, including at least Chief Garcia, had actual knowledge of the alleged constitutional violation of Officer Mosunic. Compl. ¶¶ 84, 88-89. The question is whether Plaintiff adequately alleged that the "Community Briefing" video shows San Jose Police Department policymakers' affirmative approval of Officer Mosunic's actions. The Court finds that given the statement in the "Community Briefing" video about Officer Mosunic acting "[i]n defense of his own life," the alleged factual misrepresentations in the "Community Briefing" video, and the statements about Plaintiff's criminal record, Plaintiff

has plausibly pled that the "Community Briefing" video showed that San Jose Police Department policymakers approved of Officer Mosunic's actions and the basis for them sufficient to support a ratification claim.  In particular, the statement in the "Community Briefing" video about Officer Mosunic firing at Plaintiff "[i]n defense of his own life" plausibly indicates that San Jose Police Department policymakers approved of the basis for Officer Mosunic's conduct.

Defendants unhelpfully point only to summary judgment cases to argue that Plaintiff has not met the pleading standard here.  And the cases Defendants point to do not necessarily support their position.  For example, Defendants point to *Edenfield v. Estate of Willets*, No. 05-00418 SOM/BM, 2006 WL 1041724 (D. Haw. Apr. 14, 2006).  There, the Court found that the decision of a police department's review board that officers' use of deadly force was "justified" was not enough, on its own, to establish ratification—"something more" was required.  *Id.* at *17.  Nonetheless, the court declined to grant summary judgment to defendants, because there was a question of fact related to the outrageousness of the officers' conduct, which may have been sufficient to provide the "something more" element.  *Id.*  Similarly, Plaintiff has pled plenty of facts in this case that might constitute the "something more" element required by the *Edenfield* court—for example, Plaintiff has pled outrageous conduct, *see, e.g.,* Compl. ¶ 151, misrepresentations of facts pertaining to Plaintiff's arrest, *id.* ¶ 86, and a publicly distributed video allegedly intended to "negatively portray" Plaintiff, *id.* ¶ 88.

Since the Court finds that Plaintiff has adequately pled a *Monell* claim against the City based on theories of (1) custom or practice, (2) failure to train, and (3) ratification, Defendants' motion to dismiss Plaintiff's excessive force claim against the City is hereby DENIED.  Although unclear from the Complaint, Defendants sued in their individual capacities, including Chief Garcia, may not be sued under *Monell*.  Compl. ¶ 8.

### ii.   Chief Garcia

Defendants argue that Plaintiff has failed to state a claim against Chief Garcia for supervisory liability under § 1983.  Mot. at 5-6; Reply at 12-13.  Defendants argue that Plaintiff has failed to plead Chief Garcia's personal involvement in Plaintiff's constitutional deprivation, and he has failed to plead what Chief Garcia's wrongful conduct was or what he did, saw, or knew.

1    Mot. at 6.  Further, Defendants argue that Plaintiff "fails to connect" Chief Garcia's conduct to the

2    alleged constitutional violations.  Reply at 12.  Plaintiff responds that he has alleged both (1) Chief

3    Garcia's personal involvement in the "Community Briefing" video and (2) Chief Garcia's role in

4    maintaining an improper policy or custom that contributed to Plaintiff's constitutional deprivation.

5    Opp'n at 10-11.  Further, Plaintiff argues that the supervisory liability analysis "overlaps" with the

6    liability of a municipality.  *Id.* at 11.  And he argues that courts accept a lack of details about

7    supervisors' interactions at the pleading stage.  *Id.* at 10.

8           There is no *respondeat superior* liability under § 1983.  *Ybarra v. Reno Thunderbird Mobile*

9    *Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984).  "Absent vicarious liability, each Government

10   official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Ashcroft*, 556

11   U.S. at 677.  A supervisor may be liable for a subordinate's conduct under § 1983 only if there exists

12   either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

13   connection between the supervisor's wrongful conduct and the constitutional violation.  *Felarca v.*

14   *Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018).  Even if a supervisory official is not directly

15   involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in his individual

16   capacity for his own culpable action or inaction in the training, supervision, or control of his

17   subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a

18   reckless or callous indifference to the rights of others."  *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir.

19   2011) (citation omitted).  The claim that a supervisory official "knew of unconstitutional conditions

20   and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the

21   unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory

22   liability.'"  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208)

23   (finding that conclusory allegations that supervisor promulgated unconstitutional procedures which

24   authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory

25   liability).

26          Plaintiff argues that his allegations regarding Chief Garcia's personal involvement with the

27   "Community Briefing" video are sufficient to state a claim for supervisory liability.  Opp'n at 10-11.

28   The Court notes that personal involvement is only sufficient for a supervisory liability claim to the

United States District Court
Northern District of California

extent it is "personal involvement in the constitutional deprivation." *Felarca*, 891 F.3d at 819-20. Plaintiff does not allege that the "Community Briefing" video was the "constitutional deprivation" in this case. Plaintiff may have plausibly alleged facts to support that the "Community Briefing" video constituted the City's ratification of the constitutional deprivation, but the alleged constitutional deprivation was the conduct of various San Jose Police Department officers during Plaintiff's arrest—which Chief Garcia was not "personally involved" in. *See, e.g.,* Compl. ¶¶ 91-96. Accordingly, the Court is not convinced by Plaintiff's argument that he has alleged sufficient facts to support his claim that Chief Garcia has any supervisory liability for the alleged constitutional violations of Officer Mosunic or Doe Defendants because he was "personally involved" with the "Community Briefing" video.

Without personal involvement in Plaintiff's alleged constitutional deprivations, the remaining question is whether Plaintiff's allegations regarding Chief Garcia's involvement with the "Community Briefing" video plausibly support "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Felarca*, 891 F.3d at 819-20. The Court finds that Plaintiff's allegations are insufficient to state a claim for supervisory liability against Chief Garcia. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft*, 556 U.S. at 677. The Court does not see how Chief Garcia's conduct after Plaintiff's arrest took place could plausibly have a "sufficient causal connection" to the alleged constitutional violations during that arrest. Plaintiff has failed to raise anything but conclusory allegations of Chief Garcia's conduct prior to the arrest, and he has failed to provide any other explanation for how Chief Garcia's conduct following the incident could plausibly have a "sufficient causal connection" to that incident. Other courts have found similarly. *See, e.g.*, *Wolniak v. Cty. of Sacramento*, 2017 WL 6558095, at *5 (E.D. Cal. Dec. 22, 2017) ("[Plaintiff] has not pleaded how post-conduct ratification of the alleged excessive force caused [him] harm."); *Jones v. Cty. of Sacramento*, No. Civ. 2:09-1025 WBS DAD, 2010 WL 2843409, at *7 (E.D. Cal. July 20, 2010) ("[A] supervisor's isolated and subsequent ratification of an officer's conduct ... can never be sufficient to show that the supervisor caused the officer's conduct."); *see also Hansen v. Black*, 885 F.2d 642, 46 (9th Cir. 1989) ("[T]here is no allegation that the police

United States District Court
Northern District of California

1    chief was personally involved in the incident.  Nothing the police chief did subsequent to the incident

2    could affect [plaintiff's] liability for the incident.").

3           Plaintiff points to *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991).  But that case

4    involved significantly more facts regarding a police chief's pre-incident conduct than the present

5    case.  *Id.* at 635-36 (citing a two-year study indicating that it was "almost impossible for a police

6    officer to suffer discipline as a result of a complaint lodged by a citizen"); *id.* at 645 ("[T]he principal

7    allegations in this case include among them that [the police chief] set a tone which condoned and

8    encouraged the use of excessive force[.]").  Further, Plaintiff invokes his lack of discovery regarding

9    San Jose Police Department supervisors' interactions with employees at this stage of the case.

10   Opp'n at 10.  While the Court is sympathetic, Plaintiff must plead more details about Chief Garcia's

11   "own misconduct" and its connection to the alleged constitutional violations to plausibly allege

12   supervisory liability.  *Ashcroft*, 556 U.S. at 677; *Chew v. Gates*, 27 F.3d 1432, 1446 (9th Cir. 1994)

13   (police chief was "not only responsible for the operations of the department as a whole, but was

14   familiar with the canine incidents that occurred and regularly reported to the police commission on

15   the performance of the K-9 unit"); *Estate of Pimentel v. City of Ceres*, No. 1:18-cv-01203-DAD-

16   EPG, 2019 WL 2598697, at *4 (E.D. Cal. June 24, 2019) ("[T]he court can find no factual

17   allegations in the operative complaint that, if true, would demonstrate that defendant…took any

18   action with respect to plaintiffs."); *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) ("The

19   allegations that do expressly reference the State defendants are too general to state a claim for

20   supervisory liability.")

21          Based on the insufficiency of Plaintiff's allegations regarding Chief Garcia's involvement

22   with the "Community Briefing" video to support a claim of supervisory liability, the Court

23   GRANTS Defendants' motion to dismiss the § 1983 claim against Chief Garcia WITH LEAVE TO

24   AMEND.

25          **C.     Unreasonable Post-Arrest Medical Aid Claim Against Doe Defendants**

26          Defendants move to dismiss Plaintiff's failure to render medical aid claim against Doe

27   Defendants.  This claim is not asserted against Officer Mosunic.  Compl. ¶ 103.  Defendants argue

28   that Plaintiff does not identify any delay, since (1) Plaintiff alleges that only two minutes elapsed

United States District Court
Northern District of California

1   between when Plaintiff exited his vehicle and surrendered and when he was taken into custody and

2   (2) Plaintiff fails to allege any unreasonable delay following arrest.  Mot. at 13; Reply at 14-15.

3   Defendants also argue that Plaintiff fails to allege when any Defendant requested medical care.

4   Reply at 14-15.  Plaintiff points to allegations in the Complaint that after he was shot six times and

5   severely injured, Defendants (1) deployed a flashbang grenade, (2) ordered Plaintiff to crawl on his

6   hands and knees while police officers milled about and turned their backs to him, and (3) dragged

7   Plaintiff along the ground when he asked them to carry him after they handcuffed him.

8   Opp'n at 14-15.  Further, Plaintiff points to allegations that the actions of Doe Defendants had "no

9   legitimate law enforcement purpose" and that Plaintiff was "clearly unarmed, nonthreatening, and

10  injured" at all relevant times.  *Id.*

11       "Claims alleging inadequate medical care during and immediately following an arrest are to

12  be analyzed under the Fourth Amendment."  *Espinoza v. Cal. Highway Patrol*, No. 1:16-cv-00193-

13  DAD-JLT, 2016 WL 4943960, at *3 (N.D. Cal. Sep. 16, 2016) (citing *Tatum v. City and Cty. of*

14  *S.F.*, 441 F.3d 1090, 1098-99 (9th Cir. 2006).)  Providing the "most effective medical care" is not

15  required—the Fourth Amendment only requires that an arrestee receive "objectively reasonable

16  post-arrest care."  *Borges v. City of Eureka*, No. 15-cv-00846-YGR, 2017 WL 363212, at *7 (N.D.

17  Cal. Jan. 25, 2017).  This standard is met by an officer who "promptly summons the necessary

18  medical assistance."  *Tatum*, 441 F.3d at 1099.

19       The Court agrees with Plaintiff that he has alleged sufficient facts to plausibly plead a claim

20  for unreasonable post-arrest medical aid under the Fourth Amendment against Doe Defendants.

21  Although unclear exactly when medical aid was called, Plaintiff's allegations regarding

22  unreasonable post-arrest medical aid pertain to the time on June 2, 2020 between 9:45 p.m. and the

23  call for aid.  Defendants have failed to point to any authority that establishes a minimum amount of

24  time necessary to show an objectively unreasonable delay in post-arrest medical care.  And Plaintiff

25  has made a variety of allegations to plausibly support why the delay that did occur was unreasonable.

26  Doe Defendants allegedly deployed a flashbang grenade near Plaintiff, Compl. ¶¶ 66-69, they

27  ordered Plaintiff to crawl across the ground while allegedly "clearly unarmed, non-threatening, and

28  injured," *id.* ¶¶ 71-75, and they dragged him across the ground in this state, even though Plaintiff

allegedly asked them to pick him up because he was in pain.  *Id.* ¶¶ 76-77.  Further, Plaintiff alleges that Doe Defendants served "no legitimate law enforcement purpose" by making him crawl across the ground, *id.* ¶ 74, and he alleges that this conduct and the deployment of a flashbang grenade violated various provisions of the San Jose Police Department's policies and procedures.  *Id.* ¶¶ 69, 75; *see, e.g.*, San Jose Police Department Duty Manual, L 2608.6 ("When the use of hands or another body weapon causes injury which would reasonably require medical attention, the officer using force shall ensure the injured individual receives proper medical attention **as soon as practicable**.") (emphasis added).

Assuming Plaintiff's factual allegations to be true, Doe Defendants caused a delay in his arrest and subsequent medical treatment despite no legitimate law enforcement purposes and Plaintiff's obvious injuries.  The Court finds this sufficient to plead that Defendants' actions failed to meet the "objectively reasonable" standard under the Fourth Amendment.  *Estate of Cornejo v. City of Los Angeles*, 618 Fed.Appx. 917, 920-21 (9th Cir. 2015); *Holcomb v. Ramar*, No. 1:13-CV-1102 AWI SKO, 2013 WL 5947621, at *4 (E.D. Cal. Nov. 4, 2013).

Discovery will reveal when medical aid was called, which will assist the parties and the Court in evaluating this claim.  Courts focus on whether officers "promptly **summoned** the necessary medical assistance."  *Tatum*, 441 F.3d at 1099 (emphasis added).  However, even if Defendants requested medical care as soon as Officer Mosunic allegedly shot at Plaintiff's car for the first time and paramedics were waiting at the scene, Defendants' alleged conduct—delaying Plaintiff's arrest with the flashbang, making him crawl across the ground, and dragging rather than carrying him after handcuffing him—might still have caused a delay in his treatment.  Accordingly, the Court finds that Plaintiff's lack of allegations regarding the time medical care was requested does not render his unreasonable post-arrest medical aid claim deficiently pled.

The Court DENIES Defendants' motion to dismiss Plaintiff's unreasonable post-arrest medical aid claim under federal law.

**D.    ADA and Rehabilitation Act Claims Against the City of San Jose**

Plaintiff brings claims against the City under the ADA, 42 U.S.C. § 12101, *et seq*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.  Claims 3-4, Compl.  Title II of the ADA provides: "No

qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.   To state a claim under Title II of the ADA, a plaintiff generally must show:  (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability.  *Sheehan v. City and Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014).

Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]"  42 U.S.C. § 12102(1)(A).  The definition of disability under the ADA "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of [the ADA]."  42 U.S.C. § 12102(4)(A). "[M]ajor life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A). Discrimination under the ADA includes a failure to reasonably accommodate a person's disability. 28 C.F.R. § 35.130(b)(7); *Sheehan*, 743 F.3d at 1231.  A plaintiff suing under Title II of the ADA must establish the existence of "specific reasonable accommodations that [defendant] failed to provide." *Memmer v. Marin Cty. Courts*, 169 F.3d 630, 633 (9th Cir. 1999).

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant," which can be satisfied by deliberate indifference. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  Deliberate indifference requires (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  *Id.* at 1139.  The first element of deliberate indifference is satisfied where "the plaintiff has alerted [a] public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation)[.]"  *Id.*  The second is satisfied by "conduct that is more than negligent, and involves an element of deliberateness." *Id.*

United States District Court
Northern District of California

1    Courts have recognized at least two types of Title II claims applicable to arrests:

2    "(1) wrongful arrest, where police wrongly arrest someone with a disability because they

3    misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation,

4    where, although police properly investigate and arrest a person with a disability for a crime unrelated

5    to that disability, they fail to reasonably accommodate the person's disability in the course of

6    investigation or arrest, causing the person to suffer greater injury or indignity in that process than

7    other arrestees."  *Sheehan*, 743 F.3d at 1232.

8    The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability…

9    shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

10   benefits of, or be subjected to discrimination under any program or activity receiving Federal

11   financial assistance[.]"  29 U.S.C. § 794.  It is undisputed that "there is no significant difference in

12   analysis of the rights and obligations created by the ADA and Rehabilitation Act."  Opp'n at 5 n.6

13   (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)); Mot. at 14.

14   Accordingly, the Court will analyze Plaintiff's ADA and Rehabilitation Act claims together.

15   The parties dispute whether the Rehabilitation Act requires, in addition to the elements of an

16   ADA claim, a showing that the particular police program in question here receives federal funding.

17   Defendants assert that the Rehabilitation Act requires Plaintiff to allege facts supporting his

18   exclusion from a specific public program that receives federal funding, and Plaintiff's general

19   allegations that the City of San Jose and the San Jose Police Department receive federal funding are

20   inadequate.  Mot. at 19-20.  Plaintiff argues that the Rehabilitation Act, like the ADA, applies

21   broadly to police services, programs, and activities.  Opp'n at 5.  The Court declines to require

22   Plaintiff to plead any further details about federal funding at this stage in order to state a

23   Rehabilitation Act claim.  *Sheehan* held that the ADA (and by extension the Rehabilitation Act)

24   applies to "anything a public entity does," including arrests.  743 F.3d at 1232.  Plaintiff has pled

25   that the City of San Jose and the San Jose Police Department receive federal funding.  Compl. ¶ 110.

26   To support their argument that Plaintiff must plead more facts related to federal funding, Defendants

27   can only point to orders on summary judgment and post-trial motions, which have little bearing on

28   how much detail regarding federal funding Plaintiff must provide at the pleading stage.  Mot. at 14.

1   Accordingly, the Court declines to dismiss Plaintiff's Rehabilitation Act claim based on his

2   allegations related to federal funding.

3           **i.   Disability**

4           Plaintiff alleges that during his arrest he had a disability under the ADA and Rehabilitation

5   Act due to the injuries he received from the excessive force of San Jose Police Department officers.

6   Compl. ¶ 110; Opp'n at 6.  Defendants argue that a disability under the ADA or Rehabilitation Act

7   must be an existing or known disability.  Mot. at 15.  Defendants further argue that an injury is not

8   a disability, particularly not one that had existed for as short a period of time as Plaintiff's allegedly

9   did in this case.  Reply at 9-10.  Defendants also argue that it would produce absurd results if any

10  time a person sustained an injury during an arrest, it triggered potential ADA or Rehabilitation Act

11  liability.  *Id.*  Plaintiff argues that his gunshot wounds fell squarely in the ADA and Rehabilitation

12  Act definition of "disability."  Opp'n at 5-6.

13          The Court agrees with Defendants that Plaintiff's allegations pertain to his temporary

14  injuries from the arrest—not a disability.  While Plaintiff may have adequately pled that he now has

15  a disability that resulted from the circumstances of his arrest, Compl. ¶ 62, his allegations in support

16  of his ADA and Rehabilitation Act claims are directed to his temporary injuries—the gunshot

17  wounds he sustained during the arrest, and which later likely healed to some extent after he received

18  medical treatment, Compl. ¶¶ 78-80—rather than his long-term disability.  *See, e.g., id.* ¶ 72

19  ("Defendants DOE 1 to 5 ordered Plaintiff…to crawl, on his hands and knees, until he reached the

20  officers' location.  Plaintiff…complied, despite his injured state."); *id.* ¶ 74 ("Plaintiff…was clearly

21  unarmed, non-threatening, and injured[.]"); *id.* ¶ 118 (Plaintiff was "injured" and in need of

22  "expeditious[] access to medical care"); *see also id.* ¶ 112.  Plaintiff's temporary "injured state" is

23  not a qualifying disability under the ADA.  *See* Compl. ¶ 72.  A temporary condition cannot qualify

24  as a disability for an ADA or Rehabilitation Act claim.  *See, e.g.,* 42 U.S.C § 12102(1) (disability is

25  "a physical or mental impairment that substantially limits one or more major life activities of such

26  individual"); *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) ("[T]emporary

27  psychological impairment, from December 19, 1992 to April 5, 1993…was not of sufficient duration

28  to fall within the protections of the ADA as a disability."); *Wilkey v. Cty. of Orange*, No. SACV 16-

United States District Court
Northern District of California

23

1    01168-CJC(KSx), 295 F.Supp.3d 1086, 1092 (C.D. Cal. Nov. 9, 2017) (no disability without "long-

2    term underlying condition"); *see also Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25,

3    32 n.4 (1st Cir. May 24, 2000) ("[D]uty to accommodate relates only to existing disabilities.")

4    Plaintiff has failed to point to any authority to support that a temporary injury can constitute a

5    disability under the ADA, or that an injury sustained during an arrest can be the basis for a *Sheehan*

6    claim pertaining to that same arrest.

### ii.    Reasonable Accommodations

8        Plaintiff pleads three ways in which Doe Defendants could have reasonably accommodated

9    Plaintiff's alleged disability:

> (a) by ceasing the use of force against Plaintiff YURIDIA OCHOA,
> when it was apparent that he had been shot and was injured, non-
> threatening, and attempting to surrender; (b) by expeditiously taking
> Plaintiff YURIDIA OCHOA into custody and not delaying Plaintiff
> YURIDIA OCHOA's access to medical care; and (c) by not forcing
> Plaintiff YURIDIA OCHOA to crawl on hands and knees into the
> officers' custody, when he was injured, non-threatening, and
> attempting to surrender

16   Compl. ¶ 118.  Defendants argue that Plaintiff fails to plead any reasonable accommodations,

17   because no accommodation by Doe Defendants would have been reasonable under the rapidly

18   unfolding circumstances he alleges.  Mot. at 17-18.  Further, Defendants argue that Plaintiff failed

19   to allege when it became apparent to officers that Plaintiff had been shot and no longer posed a

20   threat, that the alleged facts fail to support a lack of "expeditious" medical care, and that Plaintiff

21   fails to allege that he suffered greater injury or indignity than other arrestees due to his disability.

22   Mot. at 17-18.  Plaintiff argues that Defendants' objections are issues of fact, and that his allegations

23   regarding excessive force and lack of a legitimate law enforcement purpose are sufficient to plead

24   the "greater injury or indignity" element.  Opp'n at 7-8.

25       Under the reasonable accommodation requirement under the ADA and Rehabilitation Act,

26   "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the

27   modifications are necessary to avoid discrimination on the basis of disability[.]"

28   28 C.F.R. § 35.130(b)(7).  Since the Court has found that Plaintiff's ADA and Rehabilitation Act

United States District Court
Northern District of California

24

allegations are directed to his temporary injuries—not a disability—the Court finds that Plaintiff's allegations supporting Doe Defendants' failure to provide reasonable accommodations are deficient as well.

### iii.    Intentional Discrimination

Defendants argue that Plaintiff fails to plausibly plead that Doe Defendants intentionally discriminated against him, or withheld accommodations with deliberate indifference, because he has not alleged that they were aware of his disability, or that it was the "motivating factor" in their conduct. Mot. at 19; Reply at 11-12. Plaintiff argues that he has pled sufficient facts to show that the need for accommodation was obvious, because he alleges he was clearly unarmed, non-threatening, and injured. Opp'n at 8-9. And even if it was not obvious, he gave the officers notice that an accommodation was required by asking the officers to pick him up. *Id.* at 9. Further, Plaintiff argues that the alleged excessive force is adequate to plead the "element of deliberateness" necessary to state a claim for deliberate indifference. *Id.*

The Court finds that Plaintiff has not pled sufficient facts to plausibly allege intentional discrimination or deliberate indifference here, and that he will be hard-pressed to do so. The Court does not find it plausible that Doe Defendants were on notice of Plaintiff's disability—as opposed to his injuries, which Doe Defendants could perceive—at any relevant point in time during the arrest. *Compare Sheehan*, 743 F.3d at 1233 ("It is undisputed that Sheehan had a disability and that the officers knew it at the time they encountered her."). Doe Defendants interacted with Plaintiff a matter of minutes after he had been shot in circumstances where they had incomplete knowledge about Plaintiff's state of injury. It is not plausible that Doe Defendants had any notice of Plaintiff's disability. Plaintiff fails to cite any authority supporting an extension of *Sheehan* to cover an injury sustained during an arrest. Accordingly, the Court finds that Plaintiff has failed to plausibly plead the intentional discrimination element of his ADA and Rehabilitation Act claims.

Since Plaintiff has failed to plausibly allege any of the elements of an ADA or Rehabilitation Act claim, the Court hereby GRANTS Defendants' motion to dismiss these claims. Since the Court finds that amendment would be futile as to the first element—the existence of a pre-existing disability—for Plaintiff's ADA and Rehabilitation Act claims, the Court's dismissal of these claims

is WITHOUT LEAVE TO AMEND.

### E.  Bane Act

Under the Bane Act, a plaintiff can seek damages "if a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(b)-(c).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Simmons v. Superior Court*, 7 Cal.App.5th 1113, 1125 (2016).  A Bane Act claim requires a showing of specific intent to violate protected rights, which can be satisfied by "[r]eckless disregard of the 'right at issue.'" *Cornell v. City & Cty. of San Francisco*, 17 Cal.App.5th 766, 800 (2017).

#### i.  Chief Garcia

Plaintiff asserts a Bane Act claim against Chief Garcia for "maintain[ing] policies or customs of action and inaction resulting in harm to Plaintiff ..., with deliberate indifference or reckless disregard of rights protected by the Fourth Amendment."  Compl. ¶ 136.  Defendants argue that courts in the Ninth Circuit have declined to recognize a Bane Act claim based on a supervisory liability theory.  Mot. at 7.  Plaintiff responds by citing cases where courts declined to dismiss supervisory liability Bane Act claims based on a showing of reckless indifference.  Opp'n. at 11-13. Defendants argue that Plaintiff's reckless indifference standard comes from a prison-related case, and it is inapplicable to cases outside of the prison context.  Rep. at 13.

The Court has found no basis for a supervisory liability claim against Chief Garcia under § 1983.  Further, the Court agrees with Defendants that courts have not applied supervisory liability to a Bane Act claim.  *See, e.g.*, *Sanchez v. City of Fresno*, No. 1:12-CV-00248-LJO-SKO, 914 F.Supp.2d 1079, 1119 n.19 (E.D. Cal. 2012) ("[N]o case has actually applied supervisor liability to a Bane Act claim and this federal Court is loathe to expand the reach of Bane Act liability."); *San Diego Branch of Nat'l Ass'n for Advancement of Colored People v. Cty. of San Diego*,

1    No. 16-CV-2575-JLS (BGS), 2018 WL 1382807, at *7 (S.D. Cal. Mar. 19, 2018).  The Court is not

2    convinced based on Plaintiff's inapt jail or prison cases that supervisory liability should extend here,

3    Opp'n at 11-13, even if Plaintiff had properly alleged facts to support a supervisory liability claim

4    against Chief Garcia under § 1983.

5        Accordingly, the Court GRANTS Defendants' motion to dismiss the Bane Act claim against

6    Chief Garcia WITHOUT LEAVE TO AMEND.

7            **ii.   Officer Mosunic, Doe Defendants, and City of San Jose**

8        Plaintiff alleges that Defendant Mosunic is liable under the Bane Act for his excessive force

9    against Plaintiff under the Fourth Amendment and Article I, Section 13 of the California

10    Constitution.  Compl. ¶¶ 135-36.  Plaintiff alleges the same against Doe Defendants, and Plaintiff

11    further alleges that Doe Defendants are liable for their unreasonable post-arrest medical care and

12    ADA and Rehabilitation Act violations.  *Id.* ¶¶ 135-38.  Plaintiff also alleges that the City is

13    vicariously liable for the Bane Act violations of Defendants Mosunic and Doe Defendants.  *Id.* ¶

14    139.

15        Defendants argue that Plaintiff does not state a claim against Defendants Mosunic, Doe

16    Defendants, or the City, because Plaintiff fails to allege that these defendants had specific intent to

17    deprive Plaintiff of his rights, which Defendants argue is required under *Cornell*.  Mot. at 20 (citing

18    *Cornell*, 17 Cal.App.5th at 800); Reply at 15.  Plaintiff argues that *Cornell* in fact found that "the

19    use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element" of the

20    Bane Act.  Opp'n at 15 (citing *Cornell*, 17 Cal.App.5th at 799).  Further, Plaintiff argues that

21    recklessness is sufficient to satisfy the specific intent requirement of a Bane Act claim.  Opp'n at 15.

22    Defendants argue that Plaintiff is misreading the holding of *Cornell*.  Reply at 15.

23        Plaintiff is "incorrect that proving a Fourth Amendment violation vicariously triggers Bane

24    Act liability." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018).  However, Plaintiff

25    is correct that courts have considered recklessness sufficient to meet *Cornell*'s specific intent

26    requirement. *See, e.g.*, *Nehad*, 929 F.3d at 1142 n.15; *Cornell*, 17 Cal.App.5th at 803-804.  The

27    Court finds that Plaintiff's allegations in support of the excessive force claims against Officer

28    Mosunic and Doe Defendants, which Defendants do not challenge at this stage, are sufficient to

United States District Court
Northern District of California

meet the *Cornell* standard.  *See, e.g.,* Compl. ¶ 57 (alleging Defendant Mosunic shot at Plaintiff a total of 14 times); *id.* ¶¶ 65-69 (alleging Doe Defendants threw a flashbang grenade after Plaintiff "opened his vehicle's driver-side door to exit, surrender, and be taken into custody"); *id.* ¶¶ 70-75 (alleging Doe Defendants ordered Plaintiff to crawl along the ground when he "was clearly unarmed, non-threatening, and injured"); *id.* ¶¶ 76-77 (alleging Doe Defendants dragged Plaintiff on the ground).

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's Bane Act claims against Officer Mosunic, Doe Defendants, and the City.[1]

### F. Intentional Infliction of Emotional Distress

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (internal citations and quotations omitted).  "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050-51 (internal citations and quotations omitted).  "And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1051 (internal citations and quotations omitted).

#### i. Chief Garcia

Plaintiff asserts an intentional infliction of emotional distress claim against Chief Garcia.  At the September 23, 2021 hearing, Plaintiff conceded that an intentional infliction of emotional distress claim requires direct participation in the alleged acts.  Plaintiff has not alleged that any direct participation by Chief Garcia in the June 2, 2020 incident—Plaintiff fails to allege he was present at the scene of the June 2, 2020 incident and there are no allegations that he was aware of the incident until after it had occurred.  Accordingly, the Court GRANTS Defendants' motion to dismiss

---

[1] However, this Bane Act claim may not be based on the claim of violation of the ADA or Rehabilitation Act as discussed above.

United States District Court
Northern District of California

Plaintiff's intentional infliction of emotional distress claim against Chief Garcia. Since the Court finds that amendment would be futile as to this claim, the dismissal is WITHOUT LEAVE TO AMEND.

### ii. Officer Mosunic, Doe Defendants, and City of San Jose

Defendants argue that Plaintiff has failed to plead that Defendants Mosunic or Doe Defendants (1) engaged in outrageous conduct or (2) had the "particular intent" to cause severe emotional distress in Plaintiff. Mot. at 21-22; Reply at 15. Plaintiff argues that Defendants failed to seek to dismiss the intentional infliction of emotional distress claim against Officer Mosunic, because they only discussed the claim against "the police officers arresting [Plaintiff]." Opp'n at 16 (citing Mot. at 21. Plaintiff argues that he has alleged that Doe Defendants engaged in excessive force, which is sufficient to plead outrageous conduct. Opp'n at 16. Plaintiff argues that intentional infliction of emotional distress requires either intent to cause or reckless disregard of the probability of causing emotional distress, so Defendants' argument about intent is unavailing. Opp'n at 16. Further, Plaintiff argues that even if intent were required, his allegations are sufficient, because he has alleged that the conduct of Doe Defendants had no legitimate law enforcement purpose and he was "clearly unarmed, non-threatening, and injured." Opp'n at 17.

As a threshold matter, the Court disagrees with Plaintiff that Defendants failed to move to dismiss the intentional infliction of emotional distress claim against Officer Mosunic. The Court construes Defendants' reference to "officers arresting [Plaintiff]," Mot. at 29-30, to include Officer Mosunic.

As to outrageous conduct, the Court agrees with Plaintiff that he has pled sufficient facts, since the conduct underlying an excessive force claim can qualify as "outrageous conduct" for purposes of an intentional infliction of emotional distress claim. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n.17 (9th Cir. 2007); *see also Burns v. City of Redwood City*, 737 F.Supp.2d 1047, 1067 (N.D. Cal. Aug. 25, 2010).

As to intent, the Court agrees with Plaintiff that reckless disregard is sufficient to plead a claim of intentional infliction of emotional distress. Since Defendants do not seek to dismiss the excessive force claims against either Defendant Mosunic or Doe Defendants, Mot. at 2 n.3, and the

1   Court finds these claims properly pled, the Court finds that the allegations underlying the excessive

2   force claims are sufficient to meet the reckless disregard standard. *See Tekle v. United States*,

3   511 F.3d 839, 855-56 (9th Cir. 2007).

4          Accordingly, the Court DENIES Defendants' motion to dismiss the intentional infliction of

5   emotional distress claim against Doe Defendants and Officer Mosunic.  Further, since Defendants'

6   only argument for dismissing the intentional infliction of emotional distress claim against the City

7   is that Officer Mosunic and Doe Defendants are not liable, the Court DENIES Defendants' motion

8   to dismiss the intentional infliction of emotional distress claim against the City.

9          **G.    Assault and Battery Claim Against Chief Garcia**

10          Plaintiff asserts a claim for assault and battery against Chief Garcia.  Claim 8, Compl.  Under

11   California law, the elements of battery are: "(1) defendant intentionally performed an act that

12   resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to

13   the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to

14   plaintiff." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 526-27 (2009).  Defendants argue that

15   Plaintiff failed to plead that Chief Garcia had the intent to harm necessary for an assault or battery

16   claim under California law. Mot. at 6-7.  In response, Plaintiff argues that even if Chief Garcia did

17   not himself assault or batter Plaintiff, Chief Garcia could still be liable for assault and battery under

18   an aiding and abetting theory.  Opp'n at 13.  At the September 23, 2021 hearing, Plaintiff conceded

19   that Chief Garcia did not engage in aiding and abetting as to Plaintiff's assault and battery.

20   Accordingly, given that Plaintiff fails to allege that Chief Garcia was directly involved in Plaintiff's

21   alleged assault and battery—Plaintiff fails to plead that Chief Garcia was at the scene of the

22   June 2, 2020 incident, and there are no allegations that he knew about the incident until after it had

23   occurred—the Court agrees with Defendants that Plaintiff does not allege that Chief Garcia had the

24   intent to harm Plaintiff necessary for an assault or battery claim. *See Bailey v. Cty. of San Joaquin*,

25   No. Civ. S-08-543 LKK/KJM, 671 F.Supp.2d 1167, 1174 (E.D. Cal. Nov. 16, 2009).  The Court

26   GRANTS Defendants' motion to dismiss Plaintiff's assault and battery claims against Chief Garcia

27   WITHOUT LEAVE TO AMEND.

28

United States District Court
Northern District of California

### H.   Negligence Claim Against Chief Garcia

Plaintiff asserts a negligence claim against Chief Garcia.  Compl. ¶¶ 155-60.  Defendants argue that Plaintiff fails to plead a duty Chief Garcia owed Plaintiff and how that duty was breached. Mot. at 7.  In response, Plaintiff points to allegations regarding Chief Garcia's participation in, acquiescence to, and deliberate indifference to an alleged custom of the use of unreasonable and excessive force.  Opp'n at 14.  Further, Plaintiff cites cases where courts have declined to dismiss negligence claims based on a duty to properly train subordinates and refrain from enforcing wrongful customs.  Opp'n at 14.

The Court agrees with Defendants.  "In order to establish negligence, a plaintiff must demonstrate a duty on the part of defendant, breach of that duty, causation and damages." *Strong v. State*, 201 Cal.App.4th 1439, 1449 (2011).  Plaintiff has not alleged any specific duty that Chief Garcia breached, so Plaintiff has failed to state a claim for negligence against Chief Garcia. *See, e.g.*, *Cook v. City of Fairfield*, No. 2:15-cv-02339-KJM-KJN, 2017 WL 4269991, at *11 (E.D. Cal. Sep. 26, 2017) ("The complaint points to two sets of specific obligations as part of the supervisory defendants' obligation of due care[.]")

Accordingly, Defendants' motion to dismiss Plaintiff's negligence claim against Chief Garcia is GRANTED WITH LEAVE TO AMEND.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1)   the motion to dismiss all claims against the San Jose Police Department is GRANTED WITHOUT LEAVE TO AMEND;

(2)   the motion to dismiss the § 1983 claims against Defendant City of San Jose and Doe Defendants is DENIED;

(3)   the motion to dismiss the § 1983 claim against Defendant Edgardo Garcia for supervisory liability is GRANTED WITH LEAVE TO AMEND;

(4)   the motion to dismiss the ADA and Rehabilitation Act claims against Defendant City of San Jose is GRANTED WITHOUT LEAVE TO AMEND;

(5)   the motion to dismiss the Bane Act claim against Defendant Edgardo Garcia is

GRANTED WITHOUT LEAVE TO AMEND;

(6) the motion to dismiss the Bane Act claims against Defendant Eric Mosunic, Doe Defendants, and Defendant City of San Jose is DENIED;

(7) the motion to dismiss the intentional infliction of emotional distress claim against Defendant Edgardo Garcia is GRANTED WITHOUT LEAVE TO AMEND;

(8) the motion to dismiss the intentional infliction of emotional distress claim against Defendant Eric Mosunic, Doe Defendants, and Defendant City of San Jose is DENIED;

(9) the motion to dismiss the assault and battery claims against Defendant Edgardo Garcia is GRANTED WITHOUT LEAVE TO AMEND;

(10) the motion to dismiss the negligence claim against Defendant Edgardo Garcia is GRANTED WITH LEAVE TO AMEND; and

(11) Plaintiff SHALL file an amended complaint within 14 days of the filing of this order.

Dated: November 17, 2021

_____
BETH LABSON FREEMAN
United States District Judge