UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YURIDIA OCHOA,<br><br>    Plaintiff,<br><br> v.<br><br>CITY OF SAN JOSE, et al.,<br><br>    Defendants. | Case No. 21-cv-02456-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT OFFICER ERIC MOSUNIC'S USE OF FORCE**<br><br>[Re: ECF No. 37] |

  Before the Court is Plaintiff Yuridia Ochoa's motion for partial summary judgment in this civil rights case related to Defendant Officer Eric Mosunic's use of force during Plaintiff's arrest. This case arises out of the events of June 2, 2020, when Plaintiff led Officer Mosunic and other officers on a high-speed chase through the streets of San Jose, during which Plaintiff struck a pedestrian and another police officer. After cornering Plaintiff in the driveway of a parking garage, Officer Mosunic allegedly shot Plaintiff several times after Plaintiff repeatedly backed his car up contrary to Officer Mosunic's orders while the officer was situated to the left of the car's rear fender. Plaintiff is seeking partial summary judgment that Officer Mosunic's use of force violated Plaintiff's Fourth Amendment rights and that Officer Mosunic is not entitled to qualified immunity. Plaintiff argues based on video evidence that he was carefully backing his car up away from Officer Mosunic, so Officer Mosunic's use of deadly force was unreasonable and unprotected by qualified immunity as a matter of law. Defendants oppose, arguing that there are material disputes of fact given that Officer Mosunic had witnessed Plaintiff strike a pedestrian and an officer with his car, and Officer Mosunic believed he was trapped in the driveway when he shot Plaintiff.

  Based on the below reasoning, the Court DENIES Plaintiff's summary judgment motion.

## I. BACKGROUND

Officer Mosunic is a police officer with the San Jose Police Department ("SJPD"). *See* Declaration of Officer Eric Mosunic ("Mosunic Decl."), ECF No. 39-1 ¶ 1. He has been employed by the SJPD since 2006. *See* Merin Decl., ECF No. 37-1, Ex. A ("Meeker Report") at 24:10–12. On June 2, 2020, Officer Mosunic was on duty assisting with crowd and traffic control for protests in downtown San Jose near City Hall. *See* Mosunic Decl. ¶ 2. Officer Mosunic was assigned to the SJPD Motor Unit, so he was riding a 2007 Honda ST1300 police motorcycle equipped with red and blue lights and a siren. *See id.* ¶ 3; Meeker Report at 24:34–36.

Around 9:30 PM, Officer Mosunic was located in a parking lot around Santa Clara Street near San Jose City Hall. *See* Meeker Report at 30:11–16; Mosunic Decl. ¶ 4. Officer Mosunic received information from a SJPD police helicopter that there was "sideshow activity" in front of City Hall involving a silver Audi. *See* Mosunic Decl. ¶ 4; Meeker Report at 30:22–29. Less than five minutes later, a silver Audi driven by Plaintiff passed them heading north on North 6th Street. *See* Mosunic Decl. ¶¶ 4–5; Meeker Report at 30:31–36. Sergeant Greg Connolly drove off to conduct a traffic stop of the vehicle and Officer Mosunic followed him. *See* Meeker Report at 31:9–10; Mosunic Decl. ¶ 6.

When Sergeant Connolly and Officer Mosunic activated their lights and sirens, Plaintiff accelerated to approximately 50 mph in an area with a 35-mph speed limit. *See* Mosunic Decl. ¶ 6; Meeker Report at 31:41–32:1. While traveling at that speed, Plaintiff hit a woman crossing North 6th Street on a scooter, who went flying through the air as a result of the collision. *See* Mosunic Decl. ¶ 7; Meeker Report at 33:34–39. Officer Mosunic witnessed the collision and thought that the pedestrian had been killed. *See id.* While Officer Mosunic states that there was no doubt in his mind that Plaintiff knew that he had hit a pedestrian, Officer Mosunic was not able to conclude that Plaintiff had hit the pedestrian on purpose. *See* Meeker Report at 45:8–11, 45:24–27. Following the collision, Plaintiff accelerated to approximately 80–90 mph and Officer Mosunic lost sight of the Audi. *See* Mosunic Decl. ¶¶ 7–8; Meeker Report at 34:32–38.

After following a trail of coolant fluid, Officer Mosunic and Sergeant Connolly found a silver Audi parked on the south side of Mission Street just east of 6th Street. *See* Mosunic Decl.

¶ 9; Meeker Report at 35:8–19. Officer Mosunic stopped behind the car, and Sergeant Connolly pulled up by the driver's side door. *See* Mosunic Decl. ¶¶ 9–10; Meeker Report at 35:27–34. Suddenly, the car's brake lights turned on and Plaintiff turned hard to the left and accelerated, knocking Sergeant Connolly and his motorcycle to the ground. *See* Mosunic Decl. ¶ 10; Meeker Report at 36:1–9, 36:20–32. Officer Mosunic thought Sergeant Connolly's leg had been crushed under the weight of the motorcycle, although he saw Sergeant Connolly begin to stand up. *See* Mosunic Decl. ¶ 11; Meeker Report at 36:26–32. Officer Mosunic accelerated to pursue Plaintiff and activated his body-worn camera. *See* Mosunic Decl. ¶¶ 11–12; *see* Merin Decl., Ex. D ("Mosunic BWC Video").

Now on his own, Officer Mosunic pursued Plaintiff east on Mission Street with his lights and sirens activated. *See* Mosunic Decl. ¶ 13; Mosunic BWC Video at 0:00–0:15; *see also* Meeker Report at 40:10–11. Plaintiff made a right turn onto an entrance ramp of a parking garage of an apartment complex, which sloped down to a locked gate to the garage. *See* Mosunic Decl. ¶ 13; Mosunic BWC Video at 0:16–0:26. Officer Mosunic followed Plaintiff down the ramp, although he did not realize until after he made the turn that it was a dead end with a locked gate. *See* Mosunic Decl. ¶ 13; Meeker Report at 40:5–23. Part of the ensuing events were recorded from two different angles by bystanders in apartments to the west (350 Mission St., Apt. 202) and south (350 Mission St., Apt. 206) of the ramp. *See* Merin Decl., ECF No. 37-1, Ex. E ("Apt. 202 Video"); *id.*, Ex. F ("Apt. 206 Video"). Officer Mosunic stopped his motorcycle a few feet behind Plaintiff's car and to the left of the rear fender with the siren blaring. *See* Mosunic Decl. ¶ 17; Mosunic BWC Video at 0:23–0:33; Apt. 202 Video at 0:00–0:06; Apt. 206 Video at 0:00–0:14. Officer Mosunic immediately called for backup. *See* Mosunic Decl. ¶ 17.

Once he turned onto the ramp, Officer Mosunic was unable to move his motorcycle back up the ramp because it weighed 850 to 900 pounds and did not have a reverse gear. *See* Mosunic Decl. ¶ 15; Meeker Report at 41:3–7. Accordingly, the only way for Officer Mosunic to get the bike up the ramp was by pushing it with both hands on the handlebars and his back turned to Plaintiff. *See* Mosunic Decl. ¶ 15; Meeker Report at 41:3–7. Officer Mosunic did not have sufficient space to make a U-turn without maneuvering for several minutes. *See* Mosunic Decl. ¶ 16; Meeker Report

3

1  at 41:14–18. The ramp was approximately the width of two parking spaces. *See* Mosunic Decl.
2  ¶ 14; Meeker Report at 41:30–31. Additionally, Officer Mosunic had high walls on his left and
3  right side with no doorways or alcoves, and the only cover he had on the driveway was his
4  motorcycle. *See* Mosunic Decl. ¶¶ 14–15; Meeker Report at 41:20–28. Officer Mosunic was
5  concerned that Plaintiff would collide with him by executing a "J-turn"—*i.e.*, quickly reversing
6  direction by turning the front wheels hard to the right and accelerating. *See* Mosunic Decl. ¶ 21;
7  Meeker Report at 42:37–43:3. And he did not feel comfortable running up the ramp, because
8  Plaintiff could run him over. *See* Meeker Report at 43:36–39.

9  Officer Mosunic dismounted from his motorcycle, drew his weapon, and walked to the
10 driver's side window of Plaintiff's car while commanding Plaintiff not to move, to put his hands up,
11 and to turn the car off. *See* Mosunic Decl. ¶ 17; Mosunic BWC Video at 0:26–1:00. Officer
12 Mosunic noticed that the front left tire of Plaintiff's car was "shredded." *See* Meeker Report
13 at 43:5–7. Plaintiff's car had tinted windows, so Officer Mosunic was not able to tell if there was
14 anyone else in the vehicle besides Plaintiff. *See* Mosunic Decl. ¶ 18; Mosunic BWC Video
15 at 0:32–0:42. Plaintiff did not respond or comply with Officer Mosunic's commands. *See* Mosunic
16 Decl. ¶ 19; Mosunic BWC Video at 0:38–0:43. Officer Mosunic stepped back to his motorcycle,
17 turned the siren off, and took cover behind the motorcycle. *See* Mosunic BWC Video at 1:00–1:37;
18 Mosunic Decl. ¶ 20. Officer Mosunic received reports over his radio at this point that
19 reinforcements were on the way. *See* Mosunic BWC Video at 1:15–30.

20 After about 30 seconds, the reverse lights on Plaintiff's car illuminated. *See* Mosunic BWC
21 Video at 1:38–1:40; Mosunic Decl. ¶ 20; Meeker Report at 41:38–39. Officer Mosunic commanded
22 Plaintiff not to move, but Plaintiff did not comply—he began to slowly back the car up the ramp.
23 *See* Mosunic Decl. ¶ 20; Meeker Report at 41:38–39; Apt. 202 Video at 0:00–0:02. Without
24 providing a verbal warning to Plaintiff, Officer Mosunic fired six shots into the left rear door and
25 window of the car. *See* Mosunic BWC Video at 1:42–1:45; Mosunic Decl. ¶ 21; Meeker Report
26 at 41:39–42:2. The car stopped moving. *See* Mosunic BWC Video at 1:44–2:00; Apt. 202 Video
27 at 0:04–0:20.

28 Around 15 seconds later, Plaintiff's reverse lights illuminated again. *See* Mosunic BWC

United States District Court
Northern District of California

1  Video at 2:00–2:03; Apt. 202 Video at 0:20–25. Officer Mosunic again commanded Plaintiff not
2  to move, but Plaintiff did not comply—he began slowly reversing up the ramp a second time. *See*
3  Mosunic BWC Video at 2:04–2:08; Mosunic Decl. ¶ 23; Apt. 202 Video at 0:25–29; Meeker Report
4  at 42:29–37. Officer Mosunic fired another five shots into the vehicle's rear left window. *See*
5  Mosunic BWC Video at 2:09–2:11; Mosunic Decl. ¶ 23; Apt. 202 Video at 0:29–0:31; Meeker
6  Report at 42:29–37.

7  After briefly stopping, Plaintiff continued to reverse. *See* Mosunic BWC Video
8  at 2:12–2:16; Apt. 202 Video at 0:33–0:37; Mosunic Decl. ¶ 24. Officer Mosunic again commanded
9  Plaintiff not to move, and he fired three more shots at the car's left rear window. *See* Mosunic BWC
10 Video at 2:14–2:17; Apt. 202 Video at 0:37–0:38; Mosunic Decl. ¶ 24. Plaintiff came to a stop. *See*
11 Mosunic BWC Video at 2:18–20; Apt. 202 Video at 0:39–0:42. After the third volley of shots,
12 Sergeant Connolly arrived at the scene and stopped at the top of the ramp. *See* Mosunic Decl. ¶ 26.
13 Officer Mosunic retreated to Sergeant Connolly's position while keeping his gun pointed at Plaintiff.
14 *See* Mosunic Decl. ¶ 26; Mosunic BWC Video at 2:19–37; Apt. 202 Video at 0:41–0:52.
15 Subsequently, additional officers arrived. *See* Mosunic Decl. ¶ 26.

16 Plaintiff was struck by at least four of the fourteen bullets fired by Officer Mosunic,
17 sustaining gunshot wounds to the left arm, shoulder, and neck. *See* Merin Decl., ECF No. 37-1,
18 Exs. G, H.

19 **II.  LEGAL STANDARD**

20 "A party is entitled to summary judgment if the 'movant shows that there is no genuine
21 dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of*
22 *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
23 A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*
24 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there
25 is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

26 The party moving for summary judgment bears the initial burden of informing the Court of
27 the basis for the motion and identifying portions of the pleadings, depositions, answers to
28 interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049 (citations omitted). "[T]he 'mere existence of a scintilla of evidence in support of the [nonmovant's] position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. at 252). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* at 1049–50 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

Plaintiff seeks summary judgment on two issues—(1) that Officer Mosunic's use of force was a constitutional violation and (2) that it was not covered by qualified immunity. The Court considers each issue in turn.

#### A. Constitutional Violation

The parties agree that the Court should assess Officer Mosunic's conduct under the following three-step process for determining if an officer's behavior was objectively reasonable. *See* Motion,

6

ECF No. 37 at 5; Opposition, ECF No. 39 at 7. First, the Court assesses the severity of the intrusion on Plaintiff's Fourth Amendment rights based on the type and amount of force inflicted. *See Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018); *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2009). Second the Court assesses the government's interest in the alleged intrusion, including "the severity of the crime; whether the suspect posed an immediate threat to the officers' or public's safety; and whether the suspect was resisting arrest or attempting to escape. *Thompson*, 885 F.3d at 586; *see Miller*, 340 F.3d at 964. Third, the Court "balance[s] the gravity of the intrusion on the individual against the government's need for that intrusion." *Thompson*, 885 F.3d at 586; *see Miller*, 340 F.3d at 964. The Court considers each step in the objective reasonableness test in turn.

Plaintiff emphasizes that an officer's multiple uses of force must be "analyzed separately," including where an officer fired multiple volleys of gunshots. *See* Motion, ECF No. 37 at 5. The Court agrees in principle, although the Court notes that Plaintiff generally analyzes all three of Officer Mosunic's gunshot volleys together and provides no argument that there are significant differences between the three volleys. Accordingly, the Court will generally assess the three volleys together, with reference to evidence pertaining to each of the three volleys where applicable.

### 1. Severity of the Intrusion

Courts first consider the severity of the alleged intrusion on a plaintiff's Fourth Amendment rights. *See Thompson*, 885 F.3d at 586. Plaintiff argues that Officer Mosunic's use of deadly force was the greatest degree of force possible, and therefore the most severe intrusion on Plaintiff's Fourth Amendment rights. *See* Motion, ECF No. 37 at 5–6. Defendants do not dispute that Officer Mosunic used deadly force, or that it constituted an "extreme intrusion" on Plaintiff's Fourth Amendment rights. *See* Opposition, ECF No. 39 at 7 n.1. Accordingly, the Court finds that there is no dispute of material fact that Officer Mosunic's use of force "implicates the highest level of Fourth Amendment interests." *See A.K.H. v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016).

### 2. Government's Interest

Courts next assess the government's interest in the alleged intrusion upon the plaintiff's Fourth Amendment rights, considering (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting

arrest or attempting to escape. *Thompson*, 885 F.3d at 586. The Court considers each factor in turn.

### a. Immediate Threat

Plaintiff argues it is undisputed that he did not pose a significant threat to Officer Mosunic or anyone else, because the video evidence shows Plaintiff never accelerated or moved his vehicle in Officer Mosunic's direction. *See* Motion, ECF No. 37 at 6–7; Reply, ECF No. 40 at 3–4. Plaintiff argues that the Ninth Circuit has "consistently found use of deadly force to stop a slow-moving vehicle unreasonable when the officers could have easily stepped out of the vehicle's path to avoid danger." Motion, ECF No. 37 at 6 (quoting *Villanueva v. Cal.*, 986 F.3d 1158, 1170 (9th Cir. 2021). In response, Defendants argue that given what Officer Mosunic had seen—particularly Plaintiff's collision with Sergeant Connolly—and Plaintiff's failure to comply with his commands, Officer Mosunic reasonably feared that Plaintiff would hit him with the car. *See* Opposition, ECF No. 39 at 9–10.

The Court finds that there are disputes of material fact as to whether Officer Mosunic reasonably considered Plaintiff an immediate threat. Officer Mosunic had witnessed Plaintiff use his vehicle to collide with a pedestrian and another officer only minutes before the events on the parking garage ramp. *See* Mosunic Decl. ¶ 7; Meeker Report at 33:34–39. Officer Mosunic believed the pedestrian had been killed and that the officer had sustained serious injuries. *See* Mosunic Decl. ¶¶ 7, 11; Meeker Report at 33:34–39, 36:26–32. Further, construing all facts in Officer Mosunic's favor, he was in a location he reasonably believed to have no options for safe escape or cover. Mosunic Decl. ¶¶ 14–16; Meeker Report at 41:3–7, 41:14–31, 43:36–39. Additionally, Officer Mosunic had high walls on his left and right side with no doorways or alcoves, and the only cover he had on the driveway was his motorcycle. Officer Mosunic states he was concerned that Plaintiff would collide with him by executing a "J-turn"—*i.e.*, quickly reversing direction by turning the front wheels hard to the right and accelerating. *See* Mosunic Decl. ¶ 21; Meeker Report at 42:37–43:3. And even if a "J-turn" had not been a reasonable possibility, the video evidence shows that Plaintiff was backing his car in a direction that would bring him mere feet from Officer Mosunic's location. *See* Apt. 202 Video at 0:00–0:04, 0:25-29, 0:33–0:37; Officer BWC Video at 1:39–1:42, 2:01–2:08, 2:13–2:15. A reasonable juror faced with this evidence and the evidence

8

1  that Officer Mosunic had recently witnessed Plaintiff hit two people with his car, including another
2  police officer, might conclude that Officer Mosunic reasonably considered Plaintiff to pose an
3  immediate threat to his life and safety.

4      The fact that the video evidence shows Plaintiff's car moving slowly and not in the direction
5  of Officer Mosunic does not "blatantly contradict[]" that Officer Mosunic reasonably believed
6  himself to be in danger as Plaintiff argues. *See* Reply, ECF No. 40 at 2–3. For example, a reasonable
7  juror could conclude that Officer Mosunic reasonably feared that Plaintiff would suddenly turn in
8  his direction—particularly given how close Plaintiff's car got to the officer. The Court cannot say
9  as a matter of law that it was mere "speculation" for Officer Mosunic to consider Plaintiff a threat,
10 especially when Officer Mosunic had just seen Plaintiff strike an officer with his car after a sudden,
11 unexpected turn. *See* Motion, ECF No. 37 at 7; *see Winterrowd v. Nelson*, 480 F.3d 1181, 1184–86
12 (9th Cir. 2007) (affirming denial of officers' motion for summary judgment of qualified immunity
13 where plaintiff "wasn't even suspected of driving dangerously" and was "neither threatening nor
14 physically abusive").

15     Plaintiff's cases cannot paper over the disputes of material fact. While some of Plaintiff's
16 cases have similar facts, all involve denying summary judgment in officers' favor, and none involve
17 courts granting summary judgment of excessive force for a plaintiff. *See Villanueva*, 986 F.3d
18 at 1173; *see also Orn v. City of Tacoma*, 949 F.3d 1167, 1175–76 (9th Cir. 2020) (affirming denial
19 of officer's summary judgment motion); *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007) (same);
20 *Acosta v. City and Cty. of San Francisco*, 83 F.3d 1143, 1148 (9th Cir. 1996) (reversing judgment
21 of matter of law in officer's favor). The Court cannot conclude from these cases that there are *no*
22 disputes of material fact as to whether Officer Mosunic reasonably considered Plaintiff an
23 immediate threat.

24     Based on the above reasoning, the Court finds there are disputes of material fact as to
25 whether the immediate threat factor supports the reasonableness of Officer Mosunic's use of force.

26               **b. Severity of the Crime**

27     Plaintiff argues that Officer Mosunic's use of force was not reasonable in light of Plaintiff's
28 prior crimes—hitting a pedestrian and a police officer with his car—because the prior crimes were

"temporally separate" from the use of force. *See* Motion, ECF No. 37 at 8–9. Further, Plaintiff argues that circumstances changed—at the time of the use of force, Plaintiff was pinned in the back of a garage with a "shredded" tire. *See* Meeker Report at 43:5–7; Reply, ECF No. 40 at 4–5. Defendants argue that there is no factual dispute that Officer Mosunic witnessed Plaintiff's prior crimes, so they should still be considered in determining the objective reasonableness of Officer Mosunic's conduct. *See* Opposition, ECF No. 39 at 12.

The Court finds that there is a dispute of material fact as to whether Officer Mosunic's use of force was reasonable in light of Plaintiff's prior crimes. Plaintiff has failed to show that by the time of Officer Mosunic's use of force, circumstances had changed so significantly that Plaintiff's prior crimes—which Officer Mosunic witnessed only minutes before—could not reasonably enter into Officer Mosunic's calculus at all. For example, Plaintiff could still drive, and he still refused to comply with police officer commands. *See* Mosunic Decl. ¶¶ 20, 23, 24; Meeker Report at 41:38–39, 42:29–37; Apt. 202 Video at 0:00–0:02, 0:25–29, 0:33–0:37; Mosunic BWC Video at 2:04–2:08, 2:12–2:16. The passage of time between Plaintiff's prior crimes and Officer Mosunic's use of force may somewhat reduce the weight of those prior crimes in the reasonableness analysis—but the Court cannot say as a matter of law that Plaintiff's prior crimes can have *no* bearing on reasonableness. In fact, a reasonable juror could find that these events were all part of a single crime spree.

Plaintiff's cases fail to say otherwise. Unlike in *Nehad*, Plaintiff was still "engaged in" conduct a reasonable juror could conclude was similar to his prior crimes—*i.e.*, failing to comply with and fleeing a police officer. *See Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019) ("Even if [plaintiff] had made felonious threats or committed a serious crime prior to [officer defendant's] arrival, he was indisputably not engaged in any such conduct when [officer defendant] arrived, let alone when [officer defendant] fired his weapon."). Further, in *Harris*, the Ninth Circuit found that "[t]he fact that [plaintiff] had committed a violent crime in the immediate past is an important factor but it is not, without more, a justification for killing him on sight." *See Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997). But in the present case, there was arguably "more"—Plaintiff continued to attempt to flee, even after Officer Mosunic gave him an "opportunity

10

1  to surrender or to otherwise cease his resistance to the exercise of lawful authority." *Id.* In
2  *Cortesluna*, the plaintiff was "prone" and "not resisting arrest" when officers used force—unlike in
3  the present case where Plaintiff was actively attempting to flee at the time of Officer Mosunic's use
4  of force. *See Cortesluna v. Leon*, 979 F.3d 645, 653, 655 (9th Cir. 2020) ("By the time [officer
5  defendant] put pressure on Plaintiff's back, Plaintiff no longer posed a risk. He was lying face down
6  on the ground . . . and not resisting."); *see also Zion v. Cty. of Orange*, 874 F.3d 1072, 1076–77
7  (9th Cir. 2017) (pertaining to use of force when suspect was "lying on the ground"). And *A.D v.*
8  *California Highway Patrol* pertained to significantly different circumstances, including a scene with
9  at least six officers present cornering the plaintiff in a dead-end street, many of whom testified that
10 they did not perceive an immediate threat at the time of the use of force. 712 F.3d 446, 452 (9th
11 Cir. 2013). Such circumstances are significantly different from the present case, where Plaintiff
12 faced a single officer with only a motorcycle to use as cover.
13 Based on the above reasoning, the Court finds that there are disputes of material fact as to
14 whether the severity of Plaintiff's prior crimes supports the reasonableness of Officer Mosunic's
15 use of force.

### c. Non-Compliance and Active Resistance

17 While conceding that he was "not completely compliant" with Officer Mosunic's
18 commands, Plaintiff argues that his resistance was not aggressive and did not place Officer Mosunic
19 at risk. *See* Motion, ECF No. 37 at 9–10; Reply, ECF No. 40 at 5–6. Defendants argues that there
20 is no evidence that Plaintiff ever complied with officers' commands until after Officer Mosunic
21 fired the third volley of shots. *See* Opposition, ECF No. 39 at 12–13.
22 Since the Court has already found there are disputes of material fact as to whether Plaintiff's
23 conduct put Officer Mosunic at risk, the Court finds there are disputes of material fact as to whether
24 Plaintiff actively resisted Officer Mosunic. Additionally, a reasonable juror could find that Plaintiff
25 was continuing to use his vehicle as a deadly weapon, himself, given that he had just hit a pedestrian
26 and a police officer. Further, Plaintiff concedes that he was noncompliant. *See* Motion, ECF No.
27 37 at 9.
28 Accordingly, a reasonable juror could find that the non-compliance and active resistance

11

factor supports the reasonableness of Officer Mosunic's use of force.

### d. Other Considerations – Less Intrusive Alternatives and Department Policies

Plaintiff argues that Officer Mosunic's use of force was objectively unreasonable in light of two additional considerations—less intrusive alternatives and Officer Mosunic's violation of department policies. The Court considers each in turn.

#### i. Less Intrusive Alternatives

Plaintiff argues that a less intrusive alternative available to Officer Mosunic was to use no force and to either remain behind his motorcycle or move backwards up the ramp until backup arrived. *See* Motion, ECF No. 37 at 8; Reply, ECF No. 40 at 6–7. Further, Plaintiff argues that a less intrusive alternative was to let Plaintiff escape from the ramp, even if the result was that additional time and effort would have been required to apprehend Plaintiff. *See* Reply, ECF No. 50 at 7. In response, Defendants argue that the evidence shows it would not have been reasonable for Officer Mosunic to move out of the way or retreat from Plaintiff. *See* Opposition, ECF No. 39 at 14. Defendants argue that Officer Mosunic could not retreat without exposing himself for a significant period of time and he believed it was imperative that Plaintiff not escape and continue to endanger pedestrians and drivers in the area. *See* Opposition, ECF No. 39 at 14 (citing Mosunic Decl. ¶¶ 13–16, 27).

The Court finds there are disputes of material facts as to whether the alleged availability of less intrusive alternatives weigh against the reasonableness of Officer Mosunic's use of force. Construing all evidence in Officer Mosunic's favor, a reasonable juror might conclude that Officer Mosunic reasonably believed that retreating, staying at his location and letting Plaintiff escape, or moving out of Plaintiff's way were not available to him as less intrusive alternatives. Officer Mosunic had seen Plaintiff collide with a pedestrian and an officer, and he was located in a vulnerable position that he believed offered no safe options for escape or cover. *See* Mosunic Decl. ¶¶ 7, 14–16; Meeker Report at 33:34–39, 41:3–7, 41:14–31, 43:36–39.

Based on the above reasoning, the Court finds that there are disputed facts as to the availability of less intrusive alternatives.

12

### ii. Department Policies

Plaintiff argues that Officer Mosunic's use of force was objectively unreasonable in light of several SJPD policies.

- Plaintiff points to Policy L 2602.1, which authorizes deadly force "only when necessary in defense of human life." *See* Motion, ECF No. 37 at 10–11 (citing Merin Decl., Ex. I at 253).

- Plaintiff also points to Policy L 2602.1 for the proposition that "[w]hen feasible, officers shall, prior to the use of deadly force, make reasonable efforts to identify themselves as a peace officer and to warn that deadly force may be used, unless the officer has objectively reasonable grounds to believe the person is aware of those facts." *See* Motion, ECF No. 37 at 11 (citing Merin Decl., Ex. I at 253).

- Plaintiff points to Policy L 2602.5, which indicates that officers should consider if a suspect presents an "immediate and credible threat of physical harm" in determining whether or not to immediately use physical force. *See id.* (citing Merin Decl., Ex. I at 254).

- Plaintiff also points to Policy L 2602.5 for the proposition that officers should consider waiting for backup and use "cover, concealment, distance and the simple passage of time" for negotiation and de-escalation. *See id.* at 11–12 (citing Merin Decl., Ex. I at 254).

- Plaintiff points to Policy L 2641.5, which only authorizes shooting at the driver of a moving vehicle if (1) "[t]he officer reasonably believes he or she, or another person, cannot move to a safe position," (2) "[t]here are not other safe and viable options available," and (3) "[i]t is in defense of the life of the officer or another person." *See id.* at 12 (citing Merin Decl., Ex. I at 274–75).

In response, Defendants argue that in considering Policy L 2602.1 regarding pre-force warnings, Plaintiff must have known that Officer Mosunic might fire his weapon if Plaintiff did not comply, since Officer Mosunic approached Plaintiff's driver-side window with a gun pointed at the car. *See* Opposition, ECF No. 39 at 14–15. Regarding the other policies, Defendants argue that these policies

13

1   allow officers to use force in the face of threats to themselves and others. *See id.* at 15.

2       The Court finds there are disputes of material fact as to whether Officer Mosunic violated any of the SJPD policies Plaintiff cites. There is a material dispute of fact as to whether Officer Mosunic had "objectively reasonable grounds" to believe Plaintiff was aware that deadly force may be used under Policy L 2602.1. The evidence indicates, for instance, that Officer Mosunic wore his police uniform, he had pursued Plaintiff with the lights and siren of his police motorcycle on, and he had approached Plaintiff's car with his weapon drawn while yelling commands not to move. *See* Mosunic Decl. ¶¶ 2–3, 13; Meeker Report at 24:34–36; Mosunic BWC Video at 0:00–0:15; *see also* Meeker Report at 40:10–11; Mosunic BWC Video at 1:00–1:37. As to the other department policies, the Court agrees with Defendants that since there are material disputes of fact as to whether Officer Mosunic reasonably believed that he was in immediate danger, there is also a material dispute of fact as to whether Officer Mosunic violated any of these SJPD policies.

       Based on the above reasoning, the Court finds that there are disputes of material fact as to whether Officer Mosunic violated any SJPD policies.

### 3. Balancing

       While it is undisputed that Officer Mosunic's use of force constituted a severe intrusion into Plaintiff's Fourth Amendment rights, there are disputes of material fact as to whether that use of force was objectively reasonable in light of the government's interests in that use of force. There are disputes of material fact as to each of the factors courts consider in assessing the government's interest, so a reasonable juror could find that Officer Mosunic's use of force was objectively reasonable in light of the evidence. Accordingly, the Court finds that Plaintiff has not met his burden on a summary judgment motion. Plaintiff's motion for summary judgment that Officer Mosunic engaged in excessive force is therefore DENIED.

### B.   Qualified Immunity

       Since Plaintiff has not met his burden for showing his constitutional right was breached as a matter of law, the Court does not reach the question of whether Officer Mosunic's conduct was protected by qualified immunity. *See Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) ("To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether

the official's conduct violated a constitutional right; and (2) whether that right was "clearly established" at the time of the violation."). Given Plaintiff's failure to establish a constitutional violation under the first prong of the qualified immunity analysis, the Court need not consider the second prong.

The Court notes that the disputed facts identified in this motion will likely create a significant barrier to Officer Mosunic's claim of qualified immunity under both prongs should he decide to present such a motion. That said, a plaintiff always bears the burden of identifying a case where an officer acting under similar circumstances as the defendant was held to have violated the Fourth Amendment. *White v. Pauly*, 137 S.Ct. 548, 552 (2017).

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED.

Dated: April 14, 2022

_____
BETH LABSON FREEMAN
United States District Judge